282 So.2d 379

**Henry L. McCLARY**

v.

**STATE.**

1 Div. 239.

Court of Criminal Appeals of Alabama.

Dec. 19, 1972.

Rehearing Denied Jan. 23, 1973.

Thomas M. Haas, and Ian F. Gaston, Mobile, for appellant.

William J. Baxley, Atty. Gen., and Samuel L. Adams, Special Asst. Atty. Gen., for the State.

TYSON, Judge.

The indictment charged that Henry L. McClary "did unlawfully sell Phencyclidine Hydrochloride, a drug which produces on ingestion an hallucinatory effect, or induces a schizophrenic psychosis, to Getral A. Smith, against the peace and dignity of the State of Alabama." Jury trial resulted in a conviction, and verdict and judgment fixed punishment at seven years imprisonment in the penitentiary.

As witness for the State, James G. Ward testified that he was a narcotics agent with the Alabama Department of Public Safety; that he had been an undercover agent engaged in making "buys" of illicit drugs for the past three years; that in the latter part of July, 1969, he had been doing undercover work of this type in the Mobile, Alabama, area.

Ward testified that he and his partner, Agent Smith, arrived in Mobile on July 23, 1969, and checked into the Albert Pick Motel. That night they went to a discotheque known as the "Flower Den." While they were there, they made contact with appellant, who introduced himself as "Mad Dog" McClary, and three other persons. According to Ward, one of those persons with the appellant, later identified as James Ethridge, asked them what they were looking for, and Agent Smith replied that they were looking for drugs. Ethridge said that he thought he "could round some up."

The next night, at approximately 9:30, appellant and a person known only as Paul came to the agents' motel room. McClary said that he had thirty-four tablets of

*THC* he wanted to sell. Smith told the appellant that he would buy fifteen of the tablets and paid appellant $90.00 for the pills. Appellant kept the remaining nineteen pills.

According to the witness, Agent Smith placed the pills in a piece of paper, a napkin, and placed the napkin in a manila envelope. The envelope was sealed, then initialed by both agents. The envelope and the contents therein were identified by Ward in court. Ward stated that Smith kept the evidence in his possession until they returned to Montgomery the next day. At that time, Smith mailed the envelope containing the pills to Nelson Grubbs, a State toxicologist in Auburn, Alabama.

Gentral A. Smith, the aforementioned narcotics agent, was called as the State's next witness. Smith's testimony was for the most part substantially the same as Ward's. Smith additionally testified that he had also purchased "five hits of acid" in capsule form at $6.00 a capsule from appellant on the date in question.

Smith further testified that after placing the fifteen capsules in a brown envelope, marked "State of Alabama," he placed the envelope in his suitcase and locked it; and that no other person had a key to the suitcase. The suitcase was then placed in the trunk of his car where it remained until the agents arrived in Montgomery the next day. At that time, Smith opened the trunk and removed the envelope from the suitcase. The envelope was mailed to the toxicologist, Nelson Grubbs, from his office in Montgomery. Smith identified the envelope at trial and stated that its contents appeared to be the same that he had placed therein.

Nelson E. Grubbs, a State toxicologist, stated that as a part of his duties he examined and analyzed all types of drugs which were delivered to his office. He stated that on July 28, 1971, a sealed brown envelope containing fifteen capsules was delivered to his office by registered mail. Grubbs testified that he had had numerous occasions to examine the drug, Phencyclidine Hydrochloride, and that he examined the contents of said envelope and determined that the capsules contained Phencyclidine Hydrochloride.

I

The indictment was challenged by demurrer, attacking the constitutionality of Title 22, Section 258(21), Code of Alabama 1940, Recompiled 1958, upon which this prosecution was based.[1]

The statute in question reads as follows:

"Section 1. It shall be unlawful for any person to possess, transport, deliver, sell, offer for sale, barter, or give away in any form whatever in this state, Lysergic Acid Diethylamide (LSD–25), Psilocybin, or any other drug, compound, or substance known as Psycotomimetics, or any similar drug or substance which produces on ingestion an hallucinatory effect, or induces a schizophrenic psychoses."

Appellant contends a denial of due process of the law under the Fourteenth Amendment based on his allegation that said statute is vague as to which drugs fall within its prohibitive clauses, the drug in question, Phencyclidine Hydrochloride, not being specifically enumerated.

The objective of this statute was obviously to regulate the traffic in and the use of drugs or narcotics that are dangerous or otherwise harmful when improperly utilized. There is no question but that the State, in the exercise of its police power, possesses the power to regulate such drugs.

From testimony at trial we are able to conclude that Phencyclidine Hydrochloride is a harmful and dangerous drug when improperly utilized. It apparently is potentially dangerous to the health of the user and, consequently, is detrimental to the public welfare.

---

1. The indictment in this case was returned on May 7, 1971, prior to the September 16, 1971, effective date of the Alabama Uniform Controlled Substances Act. Thus, the repeal of

Title 22, Section 258(21), Code of Alabama 1940, Recompiled 1958, is effective only as to violations occurring on or after September 16, 1971.

David DeGruy, a pharmacist at the Mobile Mental Health Center in Mobile, Alabama, having been duly qualified, testified that he was familiar with the drug Phencyclidine Hydrochloride; that it was classified as an animal or veterinarian drug; that the effects of the drug were similar to those produced by an analgesic or anesthetic; and that the drug could be classified as a psycotomimetics. It was further DeGruy's opinion that Phencyclidine Hydrochloride is an hallucinogenic drug similar to Lysergic Acid Diethylamide (LSD) in its action.

This drug obviously falls within the category of drugs encompassed by the statute in question.

To our way of thinking, it is not violative of due process for the Legislature to cast upon the public the duty of exercising extreme caution when dealing with a potentially dangerous substance such as hallucinogenic drugs.

In State v. Hooten, Fla.App., 122 So.2d 336, we find the following pertinent language:

".  .  . [S]tatutory language which conveys a definite warning as to proscribed conduct, when measured by common understanding and practices, satisfies due process of law."

We deem a person of ordinary intelligence and understanding as being apprised and given fair notice that to unlawfully sell the drug in question—Phencyclidine Hydrochloride—constitutes a criminal offense under this statute.

We do not therefore find that said statute is either vague or unreasonable, and it was not error for the trial court to overrule appellant's demurrer to the indictment on this ground.[2]

Nor do we find the indictment void for vagueness as it is worded in substantially the same language as the statute upon which it is based. Appellant was sufficiently advised of the nature of the accusation which he was called upon to answer. Dean v. State, 240 Ala. 8, 197 So. 53, and cases cited.

### II

■ Appellant contends that the trial court erred in allowing into evidence State's Exhibit No. 1, the Phencyclidine Hydrochloride capsules which form the basis of this prosecution, in that no proper predicate was laid.

The testimony which establishes the requisite chain of custody relating to this exhibit is set out in the facts as already stated. We are of the opinion that the chain of custody was sufficiently established as to allow the introduction of said capsules to connect appellant with the offense. Assuming for argument's sake, any weak links in the chain of custody, this presented a question of credit and weight rather than admissibility. King v. State, 45 Ala. App. 348, 230 So.2d 538; Martin v. State, 42 Ala.App. 447, 167 So.2d 915.

### III

■ On cross-examination of Geraldine Shotts, character witness for the appellant, the prosecutor asked, "Mrs. Shotts, do you know Henry was arrested on February 28, 1971, with threatening a police officer?"

Defense counsel's objection was well taken as the question not only concerned the witness' personal knowledge of the appellant's conduct, but related to a time subsequent to the commission of the alleged act. Appellant, however, insists that the trial court erred in overruling his motion for a mistrial based upon the asking of this question.

2. The Supreme Court of Florida in Mullins v. State ex rel. Pellicer, 254 So.2d 787, has held a similar statute to be constitutional.

See also Scott v. Conaty, 187 S.E.2d 119, wherein the Supreme Court of West Virginia found their statute pertaining to narcotics not void for vagueness for imposing criminal sanctions by regulations to be promulgated in the future.

Whether or not a motion for mistrial should be granted is left in large measure to the trial judge's discretion. Title 30, Section 100, Code of Alabama 1940, Recompiled 1958.

Following the sustaining of appellant's objection, the jury was instructed that they were not to consider that aspect of the testimony. Later in the trial, the court similarly instructed the jury with this question being posed to them: "Is there any juror here in this matter that feels they cannot abide by these instructions?" To this question there was no response by any of the jurors. Under these circumstances we find no abuse of discretion in denying such motion. Shadle v. State, 280 Ala. 379, 194 So.2d 538, and cases cited.

### IV

■ Mrs. Shotts was further asked on cross-examination as to whether she had much contact with the appellant "within the last year or so." Defense counsel objected on the ground that such question called for the witness to give testimony as to the appellant's reputation not only prior but subsequent to the alleged commission of the offense in question.

While we do not necessarily give such an interpretation to the question here asked by the prosecutor, as it was not posed in the terminology of appellant's "reputation" during that span of time, even conceding, arguendo, that such an interpretation be given to it, the witness' negative answer removed the possibility of injury to appellant from such questioning. Anderson v. State, 44 Ala.App. 388, 210 So.2d 436; Veith v. State, 48 Ala.App. 688, 267 So.2d 480.

### V

Appellant urges that the trial court erred in overruling several objections which he interposed during the prosecutor's closing argument to the jury.

■ In the first instance, appellant claims prejudice wherein the prosecutor re-

ferred to appellant as "Mad Dog" Mc-Clary. The record indicates that appellant did in fact go by the name of "Mad Dog," the testimony of the narcotics agents being that appellant had first introduced himself to them as "Mad Dog." This comment being based on testimony given at trial, no claim of error can be predicated thereon. See Harris v. State, 48 Ala.App. 723, 267 So.2d 512.

■ Further, during summation by the prosecutor, the court reporter's transcribed notes show the following:

"MR. HAAS: . . . I am going to interrupt. There is no evidence of any sale of anybody 12 years old or 10 years, 15 years old at all. That is improper argument.

"THE COURT: Overrule.

"MR. HAAS: We except."

The record shows no other remarks by defense counsel or the prosecuting attorney in this connection. See Padgett v. State, 45 Ala.App. 56, 223 So.2d 597.

The State's evidence tended to show only that the appellant had sold Phencyclidine Hydrochloride to a narcotics agent of the State of Alabama. The remarks by the prosecutor in this regard were unsupported by any evidence in the case, inferentially or otherwise, and in effect amounted to accusations of crime other than that for which the defendant was on trial. Considering the nature of such unauthorized remarks by the prosecutor, we entertain no doubt that appellant's cause was substantially injured thereby. See Williams v. State, 42 Ala.App. 563, 171 So.2d 474; Harville v. State, 26 Ala.App. 610, 164 So. 765.

For the error shown in overruling appellant's objections to the District Attorney's argument, as above described, the judgment is reversed and the cause remanded.

Reversed and remanded.

All the Judges concur.