LEIGH M. CLARK, Retired Circuit Judge.
A jury found defendant guilty as charged in an indictment which alleged in pertinent part that he did “unlawfully sell, furnish or give away 4.2 grams of marihuana, a con *235 trolled substance, to Deputy B. J. Hornsby, contrary to and in violation of the provisions of the Alabama Uniform Controlled Substances Act, in violation of § 20-2-70 of the Code of Alabama.” The court fixed his punishment at imprisonment for four years and sentenced him accordingly.
Officer Bobby Joe Hornsby testified that in January 1981, while employed as a deputy sheriff in Jefferson County, Alabama and assigned to United Narcotics Detail Operations (UNDO), he met with Sergeant C. L. Jordan, Sergeant N. D. Harris and a reliable confidential informant at a service station in Pell City. Prom there he and the confidential informant proceeded in an automobile to a residence and turned right in the driveway and that the other two officers “proceeded on straight.” He said that he went “onto the porch, knocked on the door” and “the subject sitting there at the table [whom he identified as the defendant] came to the door. The witness further testified that he asked the defendant if he had some “weed” he could buy and that defendant said, “Yes, but all I have left is a dime bag.” According to further testimony of the witness, the defendant handed him “a plastic pill type bottle with a white top” which he opened and wherein he observed “a brownish, green, vegetable type substance consistent in appearance and aroma with marijuana.” According to the witness, he gave the defendant a “10-Dollar Bill” for that which he received from him. He then returned to the service station and met the other officers with whom he had previously met and delivered what he had bought from defendant to Sgt. C. L. Jordan and that he observed Sgt. Jordan place the bottle in a Manila envelope. He further said that the envelope was then initialed by himself, Sgt. Jordan and Sgt. Harris, and that then Sgt. Jordan “placed tape on the seams.”
Further testimony of Officer Hornsby is as follows:
“Q. All right. Now, have you seen that package since that date?
“A. I saw him [Sgt. Jordan] place it in the trunk of his vehicle on that date. I was present with him when he took it to the Department of Forensic Sciences in Jacksonville on the 13th, I believe, of January. I observed him take it out of the trunk of his vehicle and carry it into the office and turn it in there.
“I was present with him when the substance was turned back over to him, I believe, Mr. Thorn testified, in June. I observed him take it outside the building and place it back in the trunk of his vehicle at that time. And since then, I haven’t seen it until now.”
Mr. David Thorn, a drug chemist employed by Alabama Department of Forensic Sciences, testified that on January 13, 1981, Sgt. C. L. Jordan brought him a package, “a Manila envelope with specific writing across the front of the envelope” and that he examined the contents of the package which were “a prescription type vial with a snap type of cap on it” which he examined and found that it contained “approximately 4.2 grams” of “plant material” that he chemically analyzed and found to be “marijuana.” He further testified:
“Q. And when you finished your examination, you — again, you testified that you sealed it up and put it in an evidence locker?
“A. Yes, sir.
“Q. Is that evidence locker under your control?
“A. Yes, sir, it is.
“Q. How long did it stay in the evidence locker?
“A. Let me refresh my memory. “(Witness examines documents.) Okay. I turned it over to Sgt. York in June of this year—
“Q. All right.
“A. Approximately.
“Q. Five months?
“A. Five, six months; yes, sir.”
On cross-examination, Mr. Thorn testified:
“Q. Mr. Thorn, how many people have access to this evidence locker that you are talking about?
“A. Myself, the other investigator in the lab, John Case, and his secretary, Linda Harris.
*236 “Q. Was this package that you have been testifying to delivered to you personally, as opposed—
“A. Yes, sir, it was.
“Q. Was it ever in the possession of your secretary or the secretary for the department there?
“A. Was it ever in her possession?
“Q. Yes, sir.
“A. No, sir.”
Appellant presents the following issue:
“Did the trial court commit reversible error by allowing the State, over defendant’s objection to introduce into evidence State’s exhibit one and two (i.e. Manila envelope and plastic bottle) because the chain of possession of said exhibits had not been perfected and the proper predicate had not been laid?”
Appellant argues:
“Our Supreme Court has unequivocally held that to establish the sufficient predicate for admission into evidence it must be shown that there is no break in the chain of custody. Identification and continuity of possession must be sufficiently established to afford ample assurance of the authenticity of the item; Ex Parte Yarber, Ala., 375 So.2d 1231.”
The reference is to what was stated in Ex Parte Yarber at 375 So.2d 1234. We think we have quoted sufficient evidence to demonstrate that there was full compliance with the statement relied upon in Yarber. The circumstances here are very similar to the circumstances in many cases digested in Ala. Digest, Criminal Law, 5B Key No. 404(4), including Oury v. State, 53 Ala.App. 240, 298 So.2d 661 (1974) and other cases relied upon in the recent case of Coleman v. State, Ala.Cr.App., 411 So.2d 814 (1981), (cert. denied April 2, 1982) wherein it is stated by Judge DeCarlo at 411 So.2d 815-6:
“In our judgment, the facts in this case parallel those in Oury v. State, supra. Here, Adair testified that after the items were delivered to him in a sealed condition by Landrum, Adair analyzed the contents. There is not an iota of evidence that would indicate there was any tampering with the envelope or its contents before it was given to Adair. Under these circumstances, we believe there is a reasonable probability that the material was in substantially the same condition as when it was first delivered to Landrum. If the six-day possession of the material by Landrum is perceived to be a ‘weak link’ in the chain of custody, then a question of credit and weight exists rather than one of admissibility. McClary v. State, 51 Ala.App. 30, 282 So.2d 379 (1972), reversed on other grounds, 291 Ala. 481, 282 So.2d 384 (1973); King v. State, 45 Ala.App. 348, 230 So.2d 538 (1970). Therefore, it is our judgment that the items were properly admitted into evidence.”
In challenging the sufficiency of the evidence as to the identity of the defendant as the person who Officer Hornsby testified sold him the marijuana, appellant refers to the following question and answer during the cross-examination of Officer Hornsby:
“MR. EMBRY: Officer Hornsby, I believe it is your testimony that you received this, or a similar plastic bottle from the defendant, or a person in the defendant’s house. You testified from the defendant. Is that correct?
“OFFICER HORNSBY: I testified I received that bottle. Yes sir.”
In his argument on the point, appellant states in his brief:
“We suggest that upon cross-examination when Officer Hornsby was asked directly if he received the plastic bottle from the defendant he was unsure and his answer indicates this, thus not identifying the defendant, or anyone else in the court room as the person from whom he received the bottle.”
Of course, we cannot be sure that Officer Hornsby was sure that it was defendant who sold him the marijuana, but we cannot agree with appellant’s suggestion that the above-quoted question and answer show that Officer Hornsby was “unsure.” At any rate, there can be no doubt that he did *237 definitely identify the defendant as the person who sold him the marijuana.
The only other insistence on a reversal pertains to action of the court during the cross-examination of Officer Hornsby as to what occurred as officer Hornsby went into defendant’s house from the porch through the door opened by defendant, particularly the following:
“Q. And is it not a fact that someone opened the door from the inside of the house?
“A. That’s correct.
“Q. At that time, is it not a fact, Officer, that whoever was with you stepped back off the porch out of sight?
“A. Not at that exact time, no sir. “Q. Is it not a fact that you are the only person that had a conversation with anyone inside that house on that occasion? “A. I was introduced to Mr. Jackson by the subject that carried me there [confidential informant].
“MR. EMBRY: Judge, we move to exclude. That’s hearsay.
“MR. FAMBROUGH: That’s not hearsay, Your Honor.
“THE COURT: Overruled. You asked him if he wasn’t the only one that had a conversation.
“MR. EMBRY: And he said what the other fellow said.
“THE COURT: I’ll sustain, and you can —I’ll sustain on the basis that his answer was not responsive to your question. That reason only.
“MR. EMBRY: Yes, sir.”
Appellant concludes his argument as to his last insistence on a reversal by the following:
“... [W]e submit to this Honorable Court that the trial court committed reversible error by first, overruling defendant’s motion to exclude and did not correct the error when the court later sustained on the basis that the answer given was not responsive and gave no curative instructions to the jury concerning the hearsay testimony.”
Our analysis of appellant’s last insistence on a reversal and the part of the transcript to which the insistence is directed is that (1) the court was probably correct in its first ruling to the effect that defendant had opened the door to the answer of the witness, (2), nevertheless, it was probably better in the interest of justice that the court change its ruling, as it did, (3) that the court should have in this circumstance instructed the jury to disregard the excluded statement but that it is not to be wholly blamed for its failure to do so in the absence of a request that the jury be so instructed, and (4) no error prejudicial to defendant was involved.
We find no error in the record prejudicial to defendant. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment of the trial court is hereby
AFFIRMED.
All the Judges concur.