MURDOCK, Justice.
Jeffrey Johnson, by a through his aunt and next friend, Sue' Thompson, appeals from the Mobile Circuit Court’s dismissal of his action against Jim Reddoch, in his official capacity as' commissioner of the Alabama Department of Mental Health (“ADMH”),[1] Beatrice J. McLean, in her official capacity as director of Searcy Hospital (“Searcy”), and McLean and fictitiously named defendants 1 through 8 in their individual capacities. Johnson also appeals the circuit court’s quashing of a subpoena served on ADMH seeking records pertaining to Johnson. We affirm in part and reverse in part.

I. Facts and Procedural History

At the time of the incident that is the subject of this action, Searcy was a state-owned and state-operated facility for the care of the mentally ill located in Mt. Vernon, Alabama, and Johnson was a 40-year-rold patient at Searcy who -suffered from paranoid schizophrenia. According to the complaint, Johnson’s condition is so severe that Johnson was “required to be under constant 2-on-l supervision by [ADMH] employees at Searcy Hospital.” This supervision was supposed to be in place 24 hours a day, 7 days a week.
On June 22, 2012, Johnson was severely beaten in his ward at Searcy. He collapsed and he was taken to University of South Alabama Hospital. Medical testing showed that, as a result of the beating, he suffered severe and life-threatening injuries, including internal bleeding, severe bruising to his face and body, a fractured nose, and several broken ribs.
ADMH policies and procedures prohibit employees, including mental-health workers, from abusing, mistreating, exploiting, or neglecting mental-health patients in their care. Employees are also required to immediately report any injuries sustained by a patient and to report if they have knowledge of or suspect any mental-health worker of abusing, mistreating, exploiting, or neglecting a patient. In Johnson’s case, he alleged, Searcy’s mental-health workers failed to keep him under the required constant supervision and failed to immediately report his injuries.
ADMH closed Searcy on October 31, 2012. Johnson was transferred to another ADMH facility, Bryce Hospital in Tuscaloosa, Alabama. It is undisputed that, although McLean was the director of Searcy on June 22, 2012, she is not the director of Bryce Hospital and she is no longer an employee of the State of Alabama. It is also undisputed that Zelia Baugh was the commissioner of ADMH on June 22, 2012; *501 Reddoch became the commissioner of ADMH on July 1,2012.
On August 7, 2012, 'Johnson commenced in the Mobile Circuit Court the present action by a through his aunt and next friend, Sue Thompson. Johnson sought prospective injunctive relief against Red-doch and McLean in their official capacities. Johnson also asserted claims against fictitiously named defendants 1 through 8, the mental-health workers responsible for Johnson’s care (“the fictitiously named defendants”), in their individual capacities, for damages based on noncompliance with ministerial duties and checklists, violations of nondiscretionary rules, and negligent, wanton, and deliberate conduct. In his complaint, Johnson averred that his counsel
“attempted in good faith to determine the identities of the Fictitiously Named Defendants mentioned in the. Complaint. A review of the medical records reveals] that the names of the individual mental health works are illegible. It is. known that several mental health workers employed at Searcy have been suspended. Despite direct requests made to the [ADMH], they will not identify the individual mental health workers in' any way to counsel.”
On September 12, 2012, McLean filed a motion to dismiss the claims against her on the ground that she possessed State immunity under Article I, § 14, Ala. Const.1901. On September 26, 2012, Reddoch filed a virtually identical motion to dismiss the claims against him on the same ground.
On October 9, 2012, Johnson filed his “First Amended Complaint” in which he added a claim for damages against McLean in ■ her individual capacity, alleging that McLean negligently failed to supervise ADMH employees by failing to inform them of the policies and regulations they were required to follow, negligently failed to have supervisors properly train employees to monitor patients, -and negligently allowed employees to abuse, neglect, mistreat, and/or exploit residents. More specifically, Johnson alleged that during McLean’s tenure as director of Searcy, the facility developed a “very lax policy related to employees carrying out ministerial duties and following set policies and procedures.” Johnson also alleged that McLean knew that “the staffing at Searcy Hospital was insufficient to enable adequate habitation, monitoring, and care for residents, and to ensure safety of residents, including Jeffrey Johnson.” Johnson’s amended complaint also reiterated his claims against Reddoch and against the fictitiously named defendants.
On October 18, 2012, Reddoch and McLean filed separate motions to dismiss the ■ claims against them in the first amended complaint. As to the ' claims asserted against them in their official capacities, Reddoch and McLean reiterated their defense of State immunity. As to Johnson’s claims against McLean in her individual capacity, McLean contended that those claims were due to be dismissed based on State-agent immunity as enunciated in Éx parte Cranman, 792' So.2d 392 (Ala.2000).
On June 28, 2013, the circuit court entered an order in which it granted Red-doch’s and McLean’s motions to dismiss Johnson’s first amended complaint as to all claims asserted against them. The order did not provide the reasons for the dismissal of Johnson’s claims against Red-doch and McLean. The case-action summary stated that the case was “DISPOSED BY (DISM W/O PREJ) ON 06/28/2013.”
On July 22, 2013, Johnson filed a motion to alter, amend, or vacate the judgment entered on June 28, 2013, under Rule 59(e), Ala. R. Civ. P. In that motion, Johnson for the first time noted that “[w]ith the *502 closing of Searcy.-Hospital, [Johnson] has been transferred'to Bryce Hospital, also operated by [ADMH], in Tuscaloosa County.” In a footnote in the motion,-Johnson asserted that.“[n]either the motions to dismiss nor this Court’s order addressed [Johnson’s] claims asserted against [fictitiously named] Defendants 1 through 8. Discovery is proceeding in an effort to identify appropriate individuals to substitute for the current identifications.”
Ón July 25, 2013, in an.attempt to continue discovery as to the fictitiously named defendants, Johnson served on ADMH a subpoena, for records titled “Notice of Intent, to -Serve Subpoena on Non-Party, Alabama Department of Mental Health, for Jeffrey Johnson Records.” On August 2, 2013, ADMH filed an “Objection to Subpoena and Motion to Quash,” in which it noted that Johnson’s action had been dismissed “against all .named Defendants” on June 28, 2013. ■ ADMH attached as an exhibit to its motion a copy of the case-action . summary indicating that the case had been “disposed.” ADMH contended that the entire case.had been dismissed and that Johnson’s postjudgment motion reflected the posture of the action. ADMH argued that because there was no active case, it was under no obligation to respond to Johnson’s subpoena. ADMH also contended that the subpoena was “overly burdensome to this State agency and requires production of privileged matters, and confidential and private information in violation' of state and federal laws regarding personal privacy of employees.”
. On August 21, 2013, the circuit court entered an order denying Johnson’s post-judgment motion. On September 5, 2013, the. circuit court entered an order granting the- motion to quash Johnson’s subpoena to ADMH .without specifying its reason for doing so.
Johnson, challenges on appeal both the circuit court’s dismissal of . his claims against Reddoch and McLean and the circuit court’s refusal to allow nonparty discovery to ascertain the identities of and other information regarding the fictitiously named defendants.

II. Standard of Review

“ ‘Inasmuch as the issue before us is whether the trial court correctly denied a Rule 12(b)(6), Ala. R. Civ. P., motion to dismiss, “[t]his Court must accept the allegations of -the complaint as true.” Creola Land Dev., Inc. v. Bentbrooke Housing, L.L.C., 828 So.2d 285, 288 (Ala.2002). Moreover, as the defendants sought only a Rule 12(b)(6) dismissal without resort to facts supplied by affidavit or other evidentiary ■material outside the allegations of the complaint, and as the trial court accordingly treated the motion only as what it was, a motion to dismiss and not a motion for summary judgment with eviden-tiary materials outside the allegations of the complaint, those allegations themselves are the only potential source of factual support for the defendants’ claims of immunity. Rule 12(b), Ala. R. Civ. P.; Mooneyham v. State Bd. of Chiropractic Examiners, 802 So.2d 200 (Ala.2001); Garris v. Federal Land Bank of Jackson, 584 So.2d 791 (Ala.1991); Hales v. First Nat’l Bank of Mobile, 380 So.2d 797 (Ala.1980).”
Ex parte Walker, 97 So.3d 747, 749-50 (Ala.2012).
“On appeal, a dismissal is not entitled to a presumption of correctness. Jones v. Lee County Commission, 394 So.2d 928, 930 (Ala.1981); Allen v. Johnny Baker Hauling, Inc., 545 So.2d 771, 772 (Ala.Civ.App.1989). The appropriate standard of review under Rule 12(b)(6) is whether, when the allegations of the complaint are viewed most strongly, in *503 the pleader’s favor, it appears that the pleader could prove any set of circumstances that would entitle her to relief. Raley v. Citibanc of Alabama/Andalusia, 474 So.2d 640, 641 (Ala.1985); Hill v. Falletta, 589 So.2d 746 (Ala.Civ.App.1991). In making this determination, this Court does not consider whether the plaintiff will ultimately prevail, but only whether she may possibly prevail. Fontenot v. Bramlett, 470 So.2d 669, 671 (Ala.1985); Rice v. United Ins. Co. of America, 465 So.2d 1100, 1101 (Ala.1984). We note that a Rule 12(b)(6) dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. Garrett v. Hadden, 495 So.2d 616, 617 (Ala.1986); Hill v. Kraft, Inc., 496 So.2d 768, 769 (Ala.1986).”
Nance v. Matthews, 622 So.2d 297, 299 (Ala.1993).

III. Analysis

A. Does the Circuit Court’s June 28, 2013, Order Constitute a Final, Ap-pealable Judgment?

At the outset, we note that there is a question as to whether the .judgment from which Johnson has appealed is a final judgment.
“With some exceptions not applicable here, an appeal lies only from a final judgment. Ex parte Green, 58 So.3d 135, 144 (Ala.2010); see also Bean v. Craig, 557 So.2d 1249, 1253 (Ala.1990); § 12-22-2, Ala.Code 1975. ‘The general rule is that a trial court’s order is not final [for purposes of appeal] unless it disposes of all claims as to all parties.’ Dickerson v. Alabama State Univ., 852 So.2d 704, 705 (Ala.2002).”
First Commercial Bank of Huntsville v. Nowlin, 122 So.3d 829, 831 (Ala.2013) (footnote omitted).
Johnson asserts in his appellate brief, as he did in his postjudgment .motion, that the circuit court’s June 28, 2013, order did not dispose of all of his, claims. Specifically, he. contends that the' circuit court did not dispose of his claims against the fictitiously named defendants.[2] Despite this assertion, Johnson urges this Court, “in the interest of judicial economy,” to “assume appellate jurisdiction over the substance of the appeal and determine if the dismissals [of claims, against Reddoch and McLean] were proper.”
As the above, quotation from First Commercial Bank of Huntsville indicates, we could not consider this appeal if Johnson was correct that his claims against the fictitiously named defendants remain pending before the circuit court, because the June 28, 2013, order would not have disposed of all claims as to all parties. Johnson is incorrect, however, that his claims against the fictitiously' named defendants remain pending. -
First, it should be noted that the case-action summary states that the case was “DISPOSED BY CDISM W/O PREJ) ON 06/28/2013.” The circuit court’s dismissal of the claims against Reddoch and McLean based on State immunity and State-agent immunity — the only arguments presented by those parties in their motions to-dismiss — would have been with prejudice. There would be no reason for the notation of a dismissal without prejudice unless that notation was. intended to refer to the dis *504 missal of the claims against the fictitiously named defendants, who obviously did not file any motions in the circuit court because they had not been served.
Further, as Johnson admits, the circuit court’s refusal to allow the issuance of a postjudgment, • nonparty subpoena to ADMH seeking information about the fictitiously named defendants is a further indication that the circuit court understood its order of June 28, 2013, to have effectively ended Johnson’s action.
Moreover, as Reddoch and McLean note, this Court has rejected the idea that an action can be commenced or survive against only fictitiously named parties. Thus, the dismissal of, or a summary judgment as to, the only named defendants in a civil action also disposes of any remaining allegations against fictitiously named parties.
“In Ex parte Matthews, 447 So.2d 154 (Ala.1984), a complaint was filed naming Liberty Mutual Insurance Company and several fictitious parties as defendants. Liberty Mutual filed a motion to dismiss the case, which the trial court granted with the notation ‘[Mjotion to dism. is granted. This case is dismissed. All costs taxed against plaintiff.’ Both of the parties proceeded with discovery for over a year, apparently unaware that the motion had been granted. By consent of both parties, the trial court granted a‘motion to reinstate’ the case. Soon thereafter, the plaintiff substituted Matthews for a fictitious party and the trial court granted Liberty Mutual’s motion for summary judgment. This Court held that a final judgment could not be set aside based on the consent of the named defendant, and then, in effect, the suit resurrected against á fictitious defendant. The Court said that a Rule 60(b), A[la]. R. Civ. P., motion is the appropriate procedure for a delayed attack upon a judgment. That case explained that a ‘motion to reinstate’ in regard to named parties could not be construed as a Rule 60(b)(6) motion for relief from judgment. Because the judgment of the trial court was final and there was no attack upon that judgment during the proper time, the Court held that there was no action pending as to those parties substituted for ■ fictitious parties after the purported motion to reinstate.”
Toomey v. Foxboro Co., 528 So.2d 302, 303 (Ala.1988). Thus, in Ex parte Matthews, 447 So.2d 154 (Ala.1984), the Court considered the effect of the dismissal of the only named defendant and the notation that “[tjhis case is dismissed” to be that the claims against the fictitiously named parties had been dismissed as well.
In Toomey, the plaintiff filed a wrongful-death action against Courtaulds North America, Inc. (“Courtaulds”), and fictitiously named parties. Courtaulds filed a motion for a summary judgment. The Toomey Court noted that, “[according to the case action summary sheet, Judge Hocklander granted the motion on May 5, 1981, with the notation ‘Motion for Summary Judgment granted. Cause dismissed, costs taxed to Plaintiff.’ ” 528 So.2d at 302. Three months later, the plaintiff filed an amended complaint in which she substituted the Foxboro Company for a fictitiously named party; the plaintiff made the amendment expressly pursuant to Rule 15(a), Ala. R. Civ. P. The Foxboro Company filed a motion to dismiss, which the circuit court eventually granted. The plaintiff appealed. The Toomey Court ruled:
“The decision in Matthews is disposi-tive of this appeal. On May 5, 1981, Judge Hocklander dismissed the action with the notation ‘Cause dismissed, costs taxed to Plaintiff.’ This was, in both *505 form and substance, a final judgment as to all the parties. This case is, therefore, affirmed on the authority of Matthews.”
528 So.2d at 303.
In Toomey, as in Matthews, the Court considered the entry of a summary judgment in favor of the named defendant and the notation that the case was being “dismissed” to mean that the May 5, 1981, order was a final judgment as to all parties, including the fictitiously named parties. And more recently, in Weaver v. Firestone, 155 So.3d 952, 963 (Ala.2013), this Court expressly rejected the arguments that Rule 9, Ala. R. Civ. P., permits a plaintiff to “file[ ] a complaint naming as defendants only fictitious parties” and that a complaint naming only, fictitious partes “would have served to commence an action against the alleged tortfeasors.”
As was the case in Matthews and Too-mey, and consistent with our holding in Weaver, no action remained pending following the circuit court’s entry of its June 28, 2013, order. That order therefore constituted a final judgment subject to appeal.

B. Did the Circuit Court Properly Dismiss All Claims?

Reddoch and McLean contended, and the circuit court apparently agreed, that they were entitled to State immunity from Johnson’s claims seeking injunctive relief against them in their official capacities.
“Section 14 prohibits actions against state officers in their official capacities when those actions are, in effect, actions against the State. Lyons v. River Road Constr., Inc., 858 So.2d 257, 261 (Ala.2003); Mitchell v. Davis, 598 So.2d 801, 806 (Ala.1992). ‘In determining whether an action against a state officer or employee is, in fact, one. against the State, [a] [c]ourt will consider such factors as the nature of the action and the relief sought. Phillips v. Thomas, 555 So.2d 81, 83. (Ala.1989). Such factors include whether ‘a result favorable to the- plaintiff would directly affect a contract or property right of the State,’ •Mitchell, 598 So.2d at 806, whether the defendant is simply a ‘conduit’ through which the plaintiff seeks recovery of damages from' the State, Barnes v. Dale, 530 So.2d 770, 784 (Ala.1988), and whether ‘a judgment against the officer would directly affect the financial ■ status of the- State treasury,’ Lyons, 858 So.2d at 261.”
Haley v. Barbour Cnty., 885 So.2d 783, 788 (Ala.2004).
Johnson contends that he is not seeking monetary relief from Reddoch and McLean in their official capacities but, rather, is simply seeking injunctive relief and that, therefore, his claims against them in their official capacities are not precluded by § 14.
“[C]ertain actions against State officials are not regarded as actions against the State for purposes of § 14. Patterson v. Gladwin Corp., 835 So.2d 137, 142 (Ala.2002). For example, ‘[i]njunetive action may be maintained against a state official [in his official capacity], if the official is acting beyond the scope of his authority or acting illegally.’ St. Clair County v. Town of Riverside, 272 Ala. 294, 296, 128 So.2d 333, 334 (1961).”
Ex parte Dangerfield, 49 So.3d 675, 681 (Ala.2010). In his first amended complaint, Johnson sought “to enjoin [Reddoch and McLean] ... to provide a safe environment for Jeffrey Johnson that protects from abuse, neglect, exploitation and mistreatment at the hands of other mental health workers or patients at Searcy.”
The primary problem with Johnson’s claims against Reddoch and McLean in their official capacities, which seek only *506 injunctive relief, is that nothing in Johnson’s complaint alleges that Reddoch and McLean are currently “acting beyond the scope of [their] authority or acting illegally,” As noted in the rendition of the facts, Searcy ceased operations on October 31, 2012, and Johnson is now being treated at Bryce Hospital. Because Johnson’s claims for prospective injunctive relief do not allege any type of ongoing or imminent wrongdoing by Reddoch ■ and McLean, those claims cannot be maintained against the named defendants in their official capacities.
Johnson also asserted claims for damages against McLean and the fictitiously named defendants in their individual capacities, alleging negligent and wanton conduct by the defendants in connection with the alleged assault that occurred on June 22, 2012. McLean contended, and the circuit court apparently agreed, that she was entitled to State-agent immunity under Ex Parte Cran-man, 792 So.2d 392 (Ala.2000), as to those claims.
This Court, in Cranman, stated the test for State-agent immunity as follows:[3] •
“A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent’s
“(1) formulating plans, policies, or designs; or
“(2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:
“(a) making administrative adjudications;
“(b) allocating resources;
“(c) negotiating contracts;
“(d) hiring, firing, transferring, assigning, or supervising personnel; or
“(3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or
“(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers’ arresting or attempting to arrest persons; or
“(5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.
“Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent shall not be immune from civil liability in his or her personal capacity
“(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or
“(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.”
Cranman, 792 So.2d at 405. Johnson argues that the second category of exceptions is applicable in this case. •
McLean argues that she “was, at the time of the incident, serving as the Director of Searcy Hospital” and that; in that capacity, she “exercised her judgment in *507 the administration of. Searcy Hospital.” McLean cites three cases in which this Court previously has granted State-agent immunity to directors at other ADMH facilities: Ex parte Alabama Dep’t of Mental Health & Mental Retardation, 937 So.2d 1018 (Ala.2006) (directing trial court to enter summary judgment for two J.S. Tarwater Developmental Center directors for claims arising out of alleged assault of ADMH patient); Vick v. Sawyer, 936 So.2d 517 (Ala.2006) (affirming a summary judgment for two Albert P. Brewer Developmental Center directors on basis of State-agent immunity for claims arising out of alleged assault of ADMH patient); and Smith v. King, 615 So.2d 69, 70 (Ala.1993) (granting pre-Cranman immunity to director of Thomasville Adult Adjustment Center).
Although the circumstances in the present case ultimately may prove comparable to the circumstances in the cited cases, the difficulty with McLean’s argument is highlighted by the fact that the defendants in each of the cited cases were granted State-agent immunity at the summary-judgment stage. We have said that a “ ‘ “motion to dismiss is typically not the appropriate vehicle by which to assert .., qualified immunity or State-agent immunity and ... normally the determination as to the existence of such a defense should be reserved until the summary-judgment stage, following appropriate discovery.’”” Ex parte Walker, 97 So.3d 747, 750 (Ala.2012) (quoting Ex parte Alabama Dep’t of Youth Servs., 880 So.2d 393, 397-98 (Ala.2003), quoting in turn Ex parte Alabama Dep’t of Mental Health & Mental Retardation, 837 So.2d 808, 813-14 (Ala.2002)). This Court has repeatedly observed that“‘“[i]t is a rare case involving the defense of [State-agent] immunity that would be properly disposed of by a dismissal pursuant to Rule 12(b)(6), [Ala. R. Civ; Ex parte Alabama Dep’t of Mental Health & Retardation, 837 So.2d at 814 (quoting Ex parte Butts, 775 So.2d at 177, quoting in turn Patton v. Black, 646 So.2d 8, 10 (Ala.1994) (quoting earlier cases)).
McLean alleges that she exercised her judgment in the performance of her duties at Searcy and that the second exception to State-agent immunity — i.e., that she acted willfully, maliciously, fraudulently, in bad faith, beyond, her authority, or under a mistaken interpretation of. the law — does not apply. We noted in the Standard of Review, however, that, “ ‘as the trial court ... treated the motion only as what it was, a motion to dismiss- and not a motion for summary judgment with evidentiary materials outside the allegations of the complaint, [the allégations, in .the complaint] are the only potential source of factual support for the defendants’ claims of immunity.’” 198 So.3d at 502 (quoting Ex parte Walker, 97 So.3d at 749-50). In this case, the complaint does not provide sufficient factual support for extending State-agent immunity to McLean on Johnson’s claims against her in her individual capacity. :
‘ The Court in Ex parte Alabama Department of Mental Health & Mental Retardation, supra, concluded that claims against the then commissioner of ADMH in her individual capacity were “fact intensive.” As a result, the Court reasoned, the commissioner’s
“Rule 12(b) motion to dismiss is premature with regard to these claims. No discovery, has been conducted in this case. After the parties have had the opportunity to conduct discovery, Sawyer will have the opportunity to seek a summary judgment on the ground that she is entitled to State-agent immunity.”
837 So.2d at 814. Similarly, it is entirely possible that McLean will be able to produce sufficient facts to qualify for State- *508 agent immunity on a summary-judgment motion, but she has not done so at this stage of the litigation.
Given that McLean has not established facts that entitle her to State-agent immunity from Johnson’s claims, it follows that the fictitiously named defendants — who have not filed any motion with the circuit court — likewise have not done so. If anything, the fictitiously named defendants, as the mental-health workers actually responsible for Johnson’s care, may have more difficulty demonstrating that they fall within one of the Cmnman categories to which State-agent immunity generally applies. Therefore, the circuit court erred in dismissing Johnson’s claims against the fictitiously named defendants'.

C. Did the Circuit Court Properly Quash the Nonparty Subpoena?

Johnson also has challenged the circuit court’s order granting ADMH’s motion to quash a nonparty subpoena seeking information concerning the fictitiously named defendants. As explained above, the circuit court erred in dismissing Johnson’s claims against McLean in her individual capacity and hence against the fictitiously named defendants, and, therefore, Johnson’s case against the fictitiously named defendants should have remained active at the time the circuit court ruled on ADMH’s motion to quash the subpoena. It is not clear, however, whether the circuit court granted ADMH’s motion on the basis of ADMH’s argument that there was no active case or based on its argument that the requested discovery was overly burdensome and that it sought privileged information. We therefore instruct the circuit Court on remand to reconsider the issue of discovery pertaining to the fictitiously named defendants in light of the conclusions reached in this opinion.

IV. Conclusion

The circuit court correctly dismissed Johnson’s claims against Reddoch and McLean in their official capacities. The circuit court erred in dismissing Johnson’s claims against McLean and the fictitiously named defendants in their individual capacities. We remand the case for further proceedings consistent with this opinion, including consideration of Johnson’s subpoena for discovery served on ADMH.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
BOLIN, MAIN, and BRYAN, JJ., concur.
MOORE, C.J., concurs in the result.

. Reddoch resigned as commissioner effective June 30, 2015. James V. Perdue was appointed as commissioner effective July 1, 2015. Pursuant to Rule 43(b), Ala. R.App. P„ Perdue was automatically substituted as an appellee. Although Perdue is now the appel-lee, because this case proceeded in the circuit court and on appeal while Reddoch was commissioner, we have chosen not to restyle the appeal.

. Johnson argues in his appellate brief that "the trial court was wrong” in viewing its order as a final judgment because "the trial court’s order did not effectively end litigation as to the Fictitiously named] Defendants, and [Johnson] is entitled to conduct discovery against the Fictitiously named] Defendants (see Ala. R. Civ. P. 26).” Nonetheless, Johnson "timely filed this appeal to ensure that no claim is forfeited." Id. ...

. Cranman was a plurality opinion. The test set forth in Cranman was subsequently adopted by a majority of the Court in Ex parte Butts, 775 So.2d 173, 178 (Ala.2000).