Rel: May 24, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2023-2024

_____

### SC-2023-0908
_____

## Ex parte Hare, Wynn, Newell & Newton, LLP, and David Leon Ashford

## PETITION FOR WRIT OF MANDAMUS

## (In re: Joel Wesley Pennington and Leigh Ann Pennington

## v.

## Hare, Wynn, Newell & Newton, LLP, and David Leon Ashford)

## (Baldwin Circuit Court: CV-22-901271)

COOK, Justice.

This mandamus petition raises the issue whether a judgment is final when the only "defendants" remaining are fictitiously named defendants. In September 2019, David Leon Ashford, an attorney with Hare, Wynn, Newell & Newton, LLP ("Hare Wynn"), commenced a medical-malpractice action on behalf of Joel Wesley ("Wes") Pennington and Leigh Ann Pennington. In their complaint, the Penningtons alleged that several named and fictitiously named defendants had breached the standard of care when treating Wes after he suffered a stroke in September 2017.

In January 2022, Ashford and Hare Wynn terminated their representation of the Penningtons and withdrew from the case. After obtaining new counsel, the trial court entered a summary judgment in favor of the original set of named defendants, and the Penningtons added new named defendants, again stating medical-malpractice claims. Then, in January 2023, the trial court entered an order dismissing the Penningtons' medical-malpractice claims against the new named defendants, leaving only fictitiously named defendants.

Approximately four months later, in May 2023, the Penningtons moved to amend their complaint to add Ashford and Hare Wynn to their

action and to allege legal-malpractice claims against them premised on breach of contract and various misrepresentations that the Penningtons contended had been made to them by Ashford and Hare Wynn when they initially commenced their medical-malpractice action in September 2019. After the trial court granted the Penningtons' request, Ashford and Hare Wynn moved to dismiss the Penningtons' claims against them for lack of subject-matter jurisdiction because, they asserted, the January 2023 dismissal order was a final judgment and more than 30 days had passed since its entry. The trial court denied that motion.

Ashford and Hare Wynn now petition this Court for a writ of mandamus directing the trial court to vacate its order denying their motion to dismiss for lack of subject-matter jurisdiction and to dismiss the Penningtons' action against them on that basis. For the reasons stated below, we grant the petition and issue the writ.

<u>Facts and Procedural History</u>

On August 30, 2017, Wes underwent surgery at Thomas Hospital in Bay Minette to fuse his C6 and C7 vertebrae. During the surgery, Dr. William Roberts, an orthopaedic surgeon, requested the assistance of Dr. Melanie Rose, a vascular surgeon, to repair an injury that had occurred

3

to Wes's left carotid artery. Wes was discharged from the hospital the following day.

Dr. Roberts saw Wes for a postoperative check up on September 6, 2017. During that visit, Wes reported that he was not having any pain and X-rays revealed that the cervical plate used to fuse his C6 and C7 vertebrae remained in good position.

While at home on September 20, 2017, Wes suffered a stroke and was taken by ambulance to a local hospital. In the emergency room, Wes was seen by a neurologist, Dr. John L. Hinton. After confirming an occlusion of the left carotid artery and the middle cerebral artery, Dr. Hinton prescribed a heparin -- or anticoagulant -- medication treatment.

Wes was then admitted to the intensive-care unit, and Dr. William H. Hewitt was assigned as his consulting neurologist. Dr. Hewitt and Dr. Matthew McLean, another neurologist, monitored Wes's progress and oversaw his treatment plan.

On September 25, 2017, Wes complained of a headache and was having speech difficulty. Dr. McLean ordered additional testing, which revealed a hemorrhagic stroke. Based on those results, Dr. McLean discontinued the heparin therapy, prescribed Protamine to reverse the

anticoagulation, and consulted neurosurgery.

Thereafter, Wes's family requested that he be transferred to Emory University Hospital. On September 26, 2017, physicians at Emory University Hospital confirmed the occlusion and hemorrhage and began treatment. Wes remained at Emory University Hospital until October 5, 2017, when he was transferred to a rehabilitation center for an additional three weeks.

After Wes's discharge on October 28, 2017, Wes and his wife, Leigh Ann, consulted Ashford at Hare Wynn regarding a possible medical-malpractice action against Dr. Roberts, Dr. Rose, Dr. Hinton, Dr. Hewitt, Dr. McLean, and IMC-Diagnostic and Medical Clinic, LLC ("IMC-Diagnostic"), the entity that owned the medical clinic in Mobile where Dr. Hinton, Dr. Hewitt, and Dr. McLean were employed.

During that time, Wes continued extensive rehabilitation. Despite those efforts, however, Wes experienced functional, neurological, and mental deficits and is now permanently disabled.

On September 11, 2019, Ashford and Hare Wynn commenced a medical-malpractice action on behalf of the Penningtons against IMC-Diagnostic, Dr. Hinton, Dr. Hewitt, and Dr. McLean (the "IMC

5

defendants"), as well as 13 fictitiously named defendants, in the Mobile Circuit Court. The complaint alleged that the IMC defendants had breached the standard of care following Wes's stroke, resulting in Wes's suffering "devastating neurologic damage" and leaving him permanently disabled.

On January 31, 2022, Ashford and Hare Wynn filed a motion to withdraw as the Penningtons' counsel, stating that "[c]ontinuing to prosecute this action against these defendants would not comport with [their professional responsibilities] under Rule 1.16(a)(1) of the Alabama Rules of Professional Conduct." The Mobile Circuit Court granted that motion on February 4, 2022. A later email to the Penningtons' new counsel explained that, although he was sympathetic to the Penningtons' situation, Ashford did not believe that causation could be proven in the case against the IMC defendants. In addition, Ashford stated that he believed that a claim against other possible defendants -- Dr. Roberts and Dr. Rose -- could not be supported by expert testimony.

The Penningtons eventually obtained new counsel. In May 2022, the IMC defendants filed a motion for a summary judgment, which the Penningtons did not oppose. As a result, on August 11, 2022, a summary

6

judgment was entered by the Mobile Circuit Court in favor of the IMC defendants.

Later that same day, the Penningtons, through their new counsel, filed an amended complaint, naming Dr. Roberts and Dr. Rose as defendants. The amended complaint alleged that Dr. Roberts and Dr. Rose had breached the standard of care when they failed to prescribe antiplatelet medication to Wes following his surgery in August 2017.

On September 12, 2022, Dr. Roberts and Dr. Rose filed a motion to dismiss the amended complaint as untimely or, in the alternative, to transfer the case to Baldwin Circuit Court. The Penningtons agreed to transfer the case, and, on November 18, 2022, the Mobile Circuit Court transferred the case to the Baldwin Circuit Court ("the trial court").

On November 30, 2022, Dr. Roberts and Dr. Rose renewed their motion to dismiss, reasserting their contention that the Penningtons' medical-malpractice claims against them were time-barred. After the Penningtons conceded that those claims were time-barred, the trial court, on January 4, 2023, entered an order granting Dr. Roberts and Dr. Rose's motion to dismiss -- thereby dismissing the claims against the last of the named defendants in the action. Following the entry of that order, the

7

only "defendants" that remained in the action were the 13 fictitiously named defendants.

Four months later, on May 2, 2023, the Penningtons moved to add Ashford and Hare Wynn to their action and to allege legal-malpractice claims against them. The trial court granted the Penningtons' request three days later.

About a month later, the Penningtons filed their second amended complaint, in which they formally named Ashford and Hare Wynn as defendants. They alleged legal-malpractice claims premised on negligent or wanton misrepresentations and breach of contract against Ashford and Hare Wynn, and they sought compensatory damages.

After Ashford and Hare Wynn filed their answer to the Penningtons' second amended complaint, they moved to dismiss the Penningtons' claims against them. In their motion, Ashford and Hare Wynn argued that, because the trial court's January 4, 2023, order dismissing the claims against the only remaining named defendants in the Penningtons' medical-malpractice action constituted a final judgment, the trial court lacked subject-matter jurisdiction to take further action in the case 30 days after the entry of that order. As a

8

result, Ashford and Hare Wynn asserted, any subsequent orders entered by or actions taken by the trial court, including its order granting the Penningtons' request to add them as defendants, were null and void.

In their response, the Penningtons argued, among other things, that the trial court had retained subject-matter jurisdiction following the entry of its January 4, 2023, order to allow them to add Ashford and Hare Wynn as defendants in their action, asserting that there is "no case law in Alabama holding that a case cannot remain pending as to fictitiously named [d]efendants only."

The trial court denied Ashford and Hare Wynn's motion to dismiss. This petition followed.

<u>Standard of Review</u>

It is well settled that

> "'"[m]andamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court."
>
> "'<u>Ex parte Integon Corp.</u>, 672 So. 2d 497, 499 (Ala. 1995). The question of subject-matter jurisdiction is reviewable by a petition for a writ of mandamus. <u>Ex parte Flint Constr. Co.</u>, 775 So. 2d 805 (Ala. 2000).'"

9

Ex parte Tutt Real Est., LLC, 334 So. 3d 1249, 1251-52 (Ala. 2021)

(quoting Ex parte Huntingdon Coll., 309 So. 3d 606, 609-10 (Ala. 2020)).

Discussion

In their mandamus petition, Ashford and Hare Wynn maintain that the trial court lacked subject-matter jurisdiction to allow the Penningtons to amend their complaint to add new claims and new parties. Specifically, they contend that the trial court's January 4, 2023, order dismissing the claims against the only remaining named defendants in the Penningtons' medical-malpractice action -- Dr. Roberts and Dr. Rose -- constituted a final judgment and thus concluded the litigation in this case. Because neither the Penningtons nor the trial court took any additional action in the case within 30 days after the entry of that order, Ashford and Hare Wynn contend, the trial court lost jurisdiction over the case and, therefore, lacked jurisdiction to allow the Penningtons to amend their complaint to add legal-malpractice claims against Ashford and Hare Wynn 4 months later. As a result, Ashford and Hare Wynn contend, the order permitting the Penningtons to add Ashford and Hare Wynn as defendants is void and they are entitled to mandamus relief.

The Penningtons do not dispute that the trial court granted their request to amend their complaint to add new named defendants and new claims over four months after entering its January 2023 order dismissing the claims against the only remaining named defendants in their medical-malpractice action. They nevertheless contend, however, that the trial court retained jurisdiction to allow them to do so because (1) the trial court's January 2023 order does not explicitly state that it was dismissing the Penningtons' claims against the remaining fictitiously named defendants, (2) the status of the case is listed as "active" rather than as "disposed" on the docket sheet, and (3) the trial court continued to accept filings in the case even after that order was entered. Accordingly, the Penningtons contend that Ashford and Hare Wynn are not entitled to mandamus relief.

It is well settled in Alabama that a judgment or order entered by a trial court without subject-matter jurisdiction is void. See Ex parte Norfolk S. Ry., 816 So. 2d 469, 472 (Ala. 2001). Thus, unless the trial court had subject-matter jurisdiction when it entered its order granting the Penningtons' request to add Ashford and Hare Wynn as defendants to their action, that order -- along with any subsequent order entered or

11

action taken by the trial court -- was a nullity and must be set aside. See Faith Props., LLC v. First Com. Bank, 988 So. 2d 485, 490 (Ala. 2008).

As stated previously, on January 4, 2023, the trial court granted the parties' unopposed motion to dismiss the claims against the only remaining named defendants -- Dr. Roberts and Dr. Rose -- from the Penningtons' medical-malpractice action. It is undisputed that, once Dr. Roberts and Dr. Rose were dismissed from the action, no named defendants remained.

Although the Alabama Rules of Civil Procedure allow for the use of fictitiously named defendants in pleadings under specific circumstances, see Rule 9(h), Ala. R. Civ. P.,[1] this Court has held that an order dismissing all the claims against all the named defendants in a civil action is a final judgment. Zinn v. Till, 380 So. 3d 1026 (Ala. 2023); see also Ex parte Harrington, 289 So. 3d 1232, 1237 n.5 (Ala. 2019) ("A judgment that disposes of fewer than all the defendants is final when the

---

[1]Rule 9(h) provides:

"When a party is ignorant of the name of an opposing party and so alleges in the party's pleading, the opposing party may be designated by any name, and when that party's true name is discovered, the process and all pleadings and proceedings in the action may be amended by substituting the true name."

12

defendants as to whom there has been no judgment have not yet been served with notice."); Johnson v. Reddoch, 198 So. 3d 497, 504 (Ala. 2015); Sims v. JPMC Specialty Mortg., LLC, 218 So. 3d 376, 383 (Ala. Civ. App. 2016) (holding that an order that disposed of all the claims pending against the only named defendants was final); and Frosch v. City of Birmingham, [Ms. CL-2023-0392, Dec. 8, 2023] ___ So. 3d ___ (Ala. Civ. App. 2023) (determining that there was an appealable final judgment because the dismissal of all the claims against the named defendants disposed of the remaining allegations against the fictitiously named defendants).

Under such circumstances, our Court has held that a final judgment exists as to all parties, including fictitiously named defendants, and that there is nothing left to litigate. See Toomey v. Foxboro Co., 528 So. 2d 302, 303 (Ala. 1988) (holding that an order entering a summary judgment in favor of the named defendant and the notation that the case was being "dismissed" meant that the trial court's order was a final judgment as to all parties, including the fictitiously named defendants). In light of these legal principles, it seems evident that the trial court's dismissal of the claims against Dr. Roberts and Dr. Rose disposed of any

13

remaining allegations against the other 13 fictitiously named defendants, thereby creating a final judgment and ending the ligation in this case.

The Penningtons contend, however, that the trial court's January 2023 order did not constitute a final judgment because, they say, the trial court intended to dismiss only the claims against Dr. Roberts and Dr. Rose and did not intend to dismiss the action as a whole. That intent, they say, is evidenced by the facts (1) that the case's status is listed as "active" rather than as "disposed" on the docket sheet and (2) that the trial court continued to accept filings in the case even after that order was entered.

We note, however, that our Court has previously made clear that

"[a] trial '"court cannot, by its subsequent action, divest a [judgment] of its character of finality. A final [judgment] is not rendered interlocutory by the retention of the case on the docket, nor by the subsequent rendition of another [judgment] therein."' [Pratt Capital, Inc. v.] Boyett, 840 So. 2d [138] at 144-45 [(Ala. 2002)] (quoting Nichols[ v. Ingram Plumbing], 710 So. 2d [454] at 456 [(Ala. Civ. App. 1998)], quoting in turn Mingledorff v. Falkville Downtown Redev. Auth., 641 So. 2d 830, 832 (Ala. Civ. App. 1994)). Neither can a final judgment 'be made nonfinal by the trial court's calling it nonfinal.' Smith v. Fruehauf Corp., 580 So. 2d 570, 572 (Ala. 1991) (emphasis added)."

14

Faith Props., LLC, 988 So. 2d at 491. See also Queen v. Belcher, 888 So. 2d 472, 475 (Ala. 2003) (clarifying that the true test of finality is whether the order sufficiently ascertains and declares the rights of the parties, not whether the order has been titled "Final Order" and the case status has been updated to "Disposed" on the case-action summary). Thus, the facts that the trial court did not specify that the action was dismissed as to the fictitiously named defendants and did not list the case as being "disposed" on the docket sheet are irrelevant here, and the January 2023 order constituted a final judgment.

Finally, our Court has previously said that a trial court has the authority to alter, amend, or vacate a judgment, either on its own or on a party's Rule 59(e), Ala. R. Civ. P., motion, within 30 days after the entry of that judgment. See Ex parte Owen, 420 So. 2d 80, 81 (Ala. 1982). In other words,

> "a trial court has no jurisdiction to entertain a motion to amend a complaint to add new claims or new parties after a final judgment has been entered, unless that 'judgment is first set aside or vacated' pursuant to the state's rules of civil procedure. Greene v. Eighth Judicial Dist. Court of Nevada, 115 Nev. 391, 393, 990 P.2d 184, 185 (1999); see also Paganis v. Blonstein, 3 F.3d 1067 (7th Cir.1993); DiPaolo v. Rollins Leasing Corp., 700 So. 2d 31 (Fla. Dist. Ct. App. 1997); 6 Charles Alan Wright et al., Federal Practice and Procedure § 1489 (2d ed. 1990)."

15

Faith Props., 988 So. 2d at 490 (emphasis added).

In the present case, it is undisputed that neither the trial court nor the Penningtons took any such action within 30 days of the entry of the trial court's January 4, 2023, order. Under the legal principles discussed above, the trial court thus lacked subject-matter jurisdiction to take any further action in the case after February 3, 2023. See Ex parte Utilities Bd. of Roanoke, 348 So. 3d 1098, 1104 (Ala. 2021) (recognizing that, after expiration of the 30-day period prescribed by Rule 59(e), the trial court lost subject-matter jurisdiction to take any further action in the case).

The materials before us indicate, however, that on May 2, 2023, the Penningtons moved to amend their complaint to add Ashford and Hare Wynn as defendants in their action. Three days later, on May 5, 2023, the trial court entered an order granting their motion. Because the trial court lacked subject-matter jurisdiction to enter that order, it is a nullity and must be set aside. See Faith Props., 988 So. 2d at 490. Under these circumstances, Ashford and Hare Wynn have demonstrated a clear legal right to the vacation of the trial court's order allowing the Penningtons to add them as defendants and to the entry of an order dismissing the claims against them.

<u>Conclusion</u>

Because Ashford and Hare Wynn have demonstrated a clear legal right to the relief they are seeking, we direct the trial court to vacate its order granting the Penningtons leave to amend their complaint and to dismiss the Penningtons' claims against them.

PETITION GRANTED; WRIT ISSUED.

Parker, C.J., and Shaw, Wise, Bryan, Sellers, Mendheim, Stewart, and Mitchell, JJ., concur.