267 So.2d 512

Irvin HARRIS

v.

STATE.

8 Div. 196.

Court of Criminal Appeals of Alabama.

Oct. 10, 1972.

W. L. Chenault, Decatur, for appellant.

William J. Baxley, Atty. Gen., and Joseph G. L. Marston, III, Asst. Atty. Gen., for the State.

TYSON, Judge.

The indictment charged that "Irvin Harris, alias Hitler Harris, unlawfully and with malice aforethought, killed one Leola Jones by shooting her with a gun or pistol." The Jury's verdict found appellant

guilty of murder in the second degree, and its verdict and judgment set sentence at twenty-five years in the penitentiary.

The homicide occurred on January 15, 1971, at the home of Sarah Mae Jones, near Hillsboro in Lawrence County, Alabama. Appellant was living with the Jones family at the time this incident occurred with one of Mrs. Jones' daughters, Elois, who was reputed to be appellant's girlfriend.

The State's evidence tended to show that on the evening of January 15, 1971, there were several people visiting at the home of Sarah Mae Jones, one of whom was Edna Clack.

During the evening someone informed the appellant that Edna Clack, who was in another room in the house, was making derogatory remarks about him. Appellant went into the room where Edna Clack was and told her "not to be making such remarks." Edna Clack then called him a "black son-of-a-bitch," at which time he slapped her across the face. Appellant then left the room, walked out to his car, and got his single barrelled sawed-off shotgun.

Sarah Mae Jones testified that as the appellant was leaving the room, she heard him say "he was going to break up something." She followed him outside where she saw him get the shotgun from his car, load it, and approach the house. She told him, "Don't do that . . . don't come to the house."

She testified that Daniel Cunningham tried to get the gun away from the appellant, but appellant "told Daniel to get back or he would kill him, too." She stated that her daughters, Elois and Willodean, also pleaded with the appellant not to go in the house with the shotgun. The deceased, Leola Jones, stepped off of the porch into the yard in appellant's direction, apparently in an effort to reason with him, but the appellant raised the shotgun, pointed it toward Leola, telling her to get back, and when she did not, he fired the shotgun,

killing her. It was Sarah Mae Jones' testimony that no one else, other than appellant, had his hands on the shotgun at the time it was fired.

After the shooting, Elois Jones threw a brick at appellant, which hit him in the head, knocking him to the ground.

State's witness Daniel Cunningham testified that he was present at the Jones' house when Leola Jones was shot and that he witnessed the shooting. On that occasion, he heard that appellant had slapped Edna Clack and afterwards heard appellant remark that "he was going to break Edna up from talking so much."

He further stated that he followed appellant outside when he went to his car to get his shotgun; that he grabbed the shotgun in an attempt to take it away from the appellant, but appellant jerked away and told him to get back or he would shoot him. He heard Sarah Mae Jones warn appellant "not to bring the gun in the house over mama and the children"; that at about that time Leola came out of the house and stepped off of the porch, and appellant "throwed the gun up and hauled off and shot her in the stomach." He stated that Leola's mother told appellant "he had better not shoot Leola," but that appellant "just hauled off and shot her."

The appellant denied that he intentionally shot the deceased. He admitted slapping Edna Clack, an elderly woman, for making derogatory remarks about him. According to the appellant, five minutes had passed since the incident with Edna Clack when he went out to his automobile, parked in front of the house, and got his shotgun from underneath the front seat. He loaded the gun and testified that he intended to take the gun into the house and put it up. As he approached the house with the shotgun, Sarah Mae Jones warned him not to come into the house with the gun. He testified that "while I was talking to her Leola she run off the porch and grabbed the gun and we was tussling over the gun. And so I slipped down and

. . . when I got up, somebody hit me up beside the head with something, and I don't know who it was. And I guess that's when the gun went off."

Lawrence County Coroner Harvey Elliott testified that in his opinion death resulted from a wound in the chest area between the right breast and the sternum, such wound being caused by a shotgun blast which penetrated the heart and the right lung.

## I

■ Appellant urges that the trial court erred in overruling his motion to quash the indictment on the ground that that part of the indictment referring to appellant as "alias Hitler Harris" unduly prejudiced his case, as "any reference to the defendant as Hitler would per se expose him to hatred and ridicule." Appellant also cites as error the overruling of his motion to strike the words "alias Hitler Harris" from the indictment.

In Stallworth v. State, 146 Ala. 8, 41 So. 184, we find this:

" . . . [A] person may acquire by reputation a name which would as certainly identify him as his true name, and the assumed name or the one acquired by reputation may be used in the indictment just as effectively to identify him as his true name. . . ."

Inasmuch as the testimony adduced at trial showed that appellant was in fact known to some only as "Hitler" Harris, we find no error in the trial court's overruling of appellant's motions to quash and to strike.

## II

We are next called upon to review the question of whether there was sufficient evidence to support the verdict of second degree murder. Appellant contends that the most he could have been guilty of under the facts was second degree manslaughter, an offense lacking malice as one of its elements.

■ Murder in the second degree is the unlawful killing of a human being with malice, but without deliberation. Warren v. State, 34 Ala.App. 447, 41 So.2d 201; McQueen v. State, 103 Ala. 12, 15 So. 824.

■ The malice necessary to be proved to support a murder conviction has been defined in Miller v. State, 38 Ala.App. 593, 90 So.2d 166, as follows:

" 'Legal Malice' as an ingredient of murder is an intent to take human life without legal excuse, justification or mitigation, and it may be presumed from the use of a deadly weapon, unless the evidence which proves the killing rebuts the presumption. Coates v. State, 1 Ala. App. 35, 56 So. 6; Warren v. State, supra."

■ Here, appellant's use of a sawed-off shotgun presented sufficient evidence from which the jury could infer that he acted with malice. Dawson v. State, 43 Ala.App. 265, 188 So.2d 600.

■ ■ The fact that appellant denied that he intentionally shot the deceased, Leola Jones, presented a question for the jury to determine. In any event, it is clear that it was unnecessary for the jury to find a specific intent to kill, it being sufficient if the accused voluntarily set in motion or applied an unlawful force from which death ensued, however free such action might have been from actual purpose to kill. Smith v. State, 154 Ala. 31, 45 So. 626; Titus v. State, 117 Ala. 16, 23 So. 77.

■ There was sufficient evidence if believed by the jury to support the verdict. Miller v. State, 38 Ala.App. 593, 90 So.2d 166.

## III

■ Appellant objected to the following part of the State's closing argument to the jury: " 'If in all of Mr. Pettus' years in

prosecuting if there is any case that has been brought before the jury that constitutes first degree murder, it's this case.'"

Following appellant's objection, which was subsequently overruled, the trial court promptly instructed the jury in this manner:

"THE COURT: Well, ladies and gentlemen of the jury, I will charge you later on with regard to statements made by the lawyers. The evidence in this case is what you the jury determines it to be from the evidence received from the witness stand and the documents that were admitted by the Court. Of course you understand that no statement by the lawyer for each side is evidence in the case. Let's get on with it."

We do not feel this remark by the prosecuting attorney goes beyond the bounds of legitimate argument. From Bullard v. State, 40 Ala.App. 641, 120 So.2d 580, per Harwood, J., we quote:

"Of necessity a wide discretion must be allowed the trial judge in regulating the argument of counsel. Trials are adversary in nature. Vigorous prosecution and defense is to be expected. Neither defense counsel nor the prosecutor should be too closely hampered by niceties of speech if he is to be effective, but should be permitted to say his say in his own style. This of course does not mean that unfair and prejudicial argument is to be condoned for one instant. All argument of counsel is to be measured in the background and atmosphere of courtrooms. And as stated in Arant v. State, 232 Ala. 275, 167 So. 540, 544, 'Such statements are usually valued by the jury at their true worth * * * and not expected to become factors in the formulation of their verdicts.'"

## IV

Of the thirty written charges requested by the appellant, twenty-two were refused.

Charge No. 14 was confusing and therefore properly refused. Charges 15 and 19 were misleading, confusing, and otherwise inaccurate statements of the law.

 The remainder of the charges, although correct statements of the law, were refused without error in that the principles stated therein were fairly and substantially covered by the trial court's thorough and extensive oral charge or in the appellant's given charges. Title 7, Section 273, Code of Alabama 1940, Recompiled 1958.

We have reviewed this entire record (Title 15, Section 389, Code of Alabama 1940, Recompiled 1958), and finding no error therein we conclude that the judgment below is due to be and the same is hereby

Affirmed.

All the Judges concur.