Rel: April 4, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2024-2025

_____

### SC-2024-0756
_____

**Ex parte Jefferson County Board of Education**

**PETITION FOR WRIT OF MANDAMUS**

**(In re: Sharonda Smith, as parent/guardian of K.S., a minor**

**v.**

**Jefferson County Board of Education et al.)**

**(Jefferson Circuit Court: CV-24-901922)**

BRYAN, Justice.

The Jefferson County Board of Education ("the Board") seeks mandamus relief from multiple discovery orders of the Jefferson Circuit Court in Sharonda Smith's action against "Mr. Josh" for leaving her minor child asleep and unattended on a school bus. Because the name "Mr. Josh" was not sufficient to identify the bus driver, it was a fictitious name, and Smith's complaint named no defendants that were not entitled to State immunity. Accordingly, the circuit court lacked subject-matter jurisdiction to compel discovery.

## I. Facts

The only facts before us are those alleged in Smith's complaint. During the summer of 2023, Smith's minor child, K.S., participated in a summer program at a school operated by the Board. On June 5, 2023, K.S. fell asleep on a bus driven by a "Mr. Josh." K.S. suffered significant emotional distress, dehydration, and other personal injuries due to the incident.

On May 10, 2024, Smith, as the parent/guardian of K.S., commenced an action against the Board, "Mr. Josh," and 10 fictitiously named defendants. The Board moved to dismiss Smith's claims against it on the ground that it was entitled to State immunity.

On July 10, 2024, the Board sent the Jefferson Circuit Clerk a letter informing her that "Mr. Josh Dunn, with Jefferson County Board of Education, is deceased." That letter was filed in the circuit court on July 17, 2024.

On August 1, 2024, the circuit court entered an order dismissing Smith's claims against the Board. The circuit court's order stated:

> "This dismissal does not apply to that Defendant identified in the Complaint as 'Mr. Josh.' Plaintiff's efforts to identify and serve 'Mr. Josh' are ongoing and, the Court finds, diligent. Those efforts are also difficult, because the Minor Plaintiff does not know 'Mr. Josh's' full name. Wherefore, Plaintiff is granted an additional 180 days to serve that Defendant identified in this case as 'Mr. Josh.'"

On August 7, 2024, Smith filed a third-party subpoena requesting that the Board produce its entire file regarding the incident. Smith filed an identical subpoena on August 20, 2024. On September 18, 2024, the Board moved to quash Smith's subpoenas, arguing that the circuit court lacked subject-matter jurisdiction over the action because, it asserted, the only parties to the action were fictitiously named parties. The circuit court denied the Board's motion to quash on September 23, 2024.

On October 3, 2024, Smith moved to compel the Board to respond to her subpoenas. The same day, the circuit court granted Smith's motion

3

and ordered the Board to respond to Smith's subpoenas by October 18, 2024. On October 11, 2024, the Board filed a motion to reconsider the order compelling discovery and, in the alternative, for a protective order and a conditional motion to stay enforcement of the order compelling discovery. The circuit court set the matter for a hearing to be held on November 4, 2024.

On October 17, 2024, Smith filed an amended complaint identifying the bus driver as Joshua Dunn and adding "the Estate of Joshua Dunn" as a defendant. At the same time, Smith filed a suggestion of death stating that Dunn was deceased. Smith completed service of process on Dunn's estate on October 23, 2024.

On November 4, 2024, the circuit court conducted a hearing on the Board's motion to reconsider the discovery order or for a protective order and its conditional motion to stay enforcement of the discovery order. The same day, the circuit court denied the Board's motions and ordered the Board to respond to Smith's subpoenas by November 19, 2024.

On November 8, 2024, the Board petitioned this Court for a writ of mandamus (1) ordering the circuit court to grant the Board's motion to reconsider the discovery order or for a protective order, (2) prohibiting

4

the circuit court from entering any orders or taking any action directed against the Board in furtherance of the litigation, and (3) directing the circuit court to dismiss the entire action for lack of subject-matter jurisdiction.

## II. Standard of Review

To the extent that the Board seeks relief from the circuit court's orders compelling discovery, the Board's petition is properly a petition for a writ of mandamus. Ex parte Sealy, L.L.C., 904 So. 2d 1230, 1232 (Ala. 2004) ("Mandamus will lie to direct a trial court to vacate a void judgment or order.").

> "A writ of mandamus is an extraordinary remedy, and it will be 'issued only when there is: 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court.'"

Ex parte Empire Fire & Marine Ins. Co., 720 So. 2d 893, 894 (Ala. 1998) (quoting Ex parte United Serv. Stations, Inc., 628 So. 2d 501, 503 (Ala. 1993)).

To the extent that the Board requests that we prohibit the circuit court from entering any orders or taking any action directed against the Board, the Board's petition is properly one for a writ of prohibition. Ex

5

parte Segrest, 718 So. 2d 1, 4 (Ala. 1998) ("A writ of prohibition is a preventive measure, rather than a corrective remedy."). Although the Board does not expressly request a writ of prohibition, we may treat the Board's petition as one for a writ of prohibition. Ex parte City of Leeds, 849 So. 2d 251, 253 (Ala. Crim. App. 2002) (treating a petition styled as a petition for a writ of mandamus as a petition for a writ of prohibition). This is particularly true when the petitioner seeks to prevent a lower court from acting on the ground that the lower court lacks jurisdiction:

> "Like mandamus, prohibition is an extraordinary writ, 'and will not issue unless there is no other adequate remedy.' Ex parte K.S.G., 645 So. 2d 297, 299 (Ala. Civ. App. 1992) (citing Ex parte Strickland, 401 So. 2d 33 (Ala. 1981)). 'Prohibition is proper for the prevention of a usurpation or abuse of power where a court undertakes to act in a manner in which it does not properly have jurisdiction.' Ex parte K.S.G., 645 So. 2d at 299. A writ of prohibition will issue '[o]nly if the pleadings show on their face that the lower court does not have jurisdiction.' Ex parte Perry County Bd. of Educ., 278 Ala. 646, 651, 180 So. 2d 246, 250 (1965). 'In such instances, the act of the usurping court is wholly void, and will not support an appeal.' Id."

Ex parte Sealy, L.L.C., 904 So. 2d at 1232-33.

### III. Analysis

In its petition, the Board contends that the circuit court never had subject-matter jurisdiction over the action because the only defendant it

6

says Smith named in her complaint -- the Board -- was entitled to State immunity and all other defendants were fictitiously named, including "Mr. Josh." In the alternative, the Board contends that, even if the circuit court had subject-matter jurisdiction initially, it lost subject-matter jurisdiction when it entered a final judgment -- i.e., its August 1, 2024, dismissal order -- in favor of the Board, which at the time was the only named defendant.

It does not appear that this Court has considered whether a nonparty subject to a discovery order may challenge the order based on the trial court's lack of subject-matter jurisdiction. However, the United States Supreme Court held in United States Catholic Conference v. Abortion Rights Mobilization, Inc., 487 U.S. 72, 76 (1988), that "a nonparty witness may attack a civil contempt citation by asserting that the issuing court lacks jurisdiction over the case." The Court reasoned:

> "[T]he subpoena power of a court cannot be more extensive than its jurisdiction. It follows that if a district court does not have subject-matter jurisdiction over the underlying action, and the process was not issued in aid of determining that jurisdiction, then the process is void and an order of civil contempt based on refusal to honor it must be reversed."

Id.

7

Here, the circuit court did not enter its orders requiring the Board to comply with Smith's subpoenas to aid the circuit court in determining its own jurisdiction. Rather, the circuit court entered those orders to assist in adjudicating the action on the merits. Accordingly, the Board's challenge to the circuit court's orders on the ground that the circuit court lacked subject-matter jurisdiction is a proper argument for a nonparty to make. But, before we address the Board's argument, we must first address whether the Board's petition was timely.

## A. Timeliness

In her response to the Board's petition, Smith contends that the Board did not timely file its mandamus petition because it did so more than 42 days after the entry of the circuit court's August 1, 2024, order dismissing Smith's claims against the Board. Smith also contends that the Board did not file its petition within 42 days after the entry of the circuit court's September 23, 2024, order denying the Board's motion to quash Smith's subpoenas. Smith contends that the circuit court's October 3, 2024, and November 4, 2024, orders, which compelled the Board to respond to the subpoenas, did not provide the Board any basis to seek mandamus relief that was not already apparent from the August

8

1, 2024, and September 23, 2024, orders. Further, Smith contends that the Board did not include a statement of circumstances constituting good cause for this Court to consider its untimely petition, as required by Rule 21(a)(3), Ala. R. App. P. Accordingly, Smith contends that this Court must dismiss the Board's petition.

Rule 21(a)(3) provides:

"The [mandamus] petition shall be filed within a reasonable time. The presumptively reasonable time for filing a petition seeking review of an order of a trial court or of a lower appellate court shall be the same as the time for taking an appeal. If a petition is filed outside this presumptively reasonable time, it shall include a statement of circumstances constituting good cause for the appellate court to consider the petition, notwithstanding that it was filed beyond the presumptively reasonable time."

Generally, the time for taking an appeal is 42 days. Rule 4(a)(1), Ala. R. App. P. Thus, as Smith contends, the presumptively reasonable time for filing a mandamus petition is 42 days after the entry of the order from which relief is sought.

However, because the Board challenges the circuit court's subject-matter jurisdiction, we may consider its arguments regardless of timeliness. Ex parte K.R., 210 So. 3d 1106, 1112 (Ala. 2016) (holding that this Court may consider an argument challenging a trial court's subject-

9

matter jurisdiction regardless of timeliness because this Court notices jurisdictional issues <u>ex mero motu</u>). Although Smith concedes that general principle in her answer, she contends that it does not apply here because "the Board's mandamus petition does not contain any valid challenge to the [circuit court's] subject-matter jurisdiction over [Smith's] claims against the [b]us [d]river." Answer, p. 10.

In <u>Ex parte Blackman</u>, 312 So. 3d 1246, 1252 (Ala. 2020), we set forth the framework that appellate courts follow when determining whether a petitioner has raised a jurisdictional issue, thereby avoiding waiver based on timeliness, as follows:

> "[I]n accordance with this Court's decision in <u>Ex parte K.R.</u>, [210 So. 3d 1106 (Ala. 2016),] a petition for a writ of mandamus filed outside the presumptively reasonable time set forth in Rule 21(a)(3)[, Ala. R. App. P.,] nonetheless may be considered by an appellate court insofar as the petitioner challenges the jurisdiction of the trial court. We must determine whether [the petitioner's] … claim is jurisdictional. If it is jurisdictional, we will consider the merits of his petition pursuant to <u>K.R.</u> If it is not jurisdictional, then his untimely filing of a petition constitutes a waiver of his right to mandamus review."

Under that framework, we first determine whether the issue raised in a mandamus petition implicates the jurisdiction of the trial court <u>before</u> we determine whether that issue is meritorious. In making the

10

first inquiry, we assume that the petitioner's argument is meritorious; the sole question is whether the argument would, in fact, implicate the trial court's subject-matter jurisdiction. If so, the petition cannot be dismissed as untimely, even if the argument is ultimately determined to be without merit.

Of course, assuming that a petitioner's argument is meritorious under Blackman's framework does not relieve the petitioner of its ultimate burden to demonstrate that its argument is meritorious to prevail. However, the petitioner bears that burden only after demonstrating that its argument is jurisdictional.

Applying Blackman's framework here, we must first determine whether the Board's arguments, assuming they are meritorious, would establish that the circuit court lacked subject-matter jurisdiction to enter the orders from which the Board seeks relief. Because we find the Board's first argument dispositive, we consider only that argument.

In its petition, the Board contends that the circuit court never had jurisdiction over the action because, it asserts, the only nonimmune defendants listed in Smith's complaint were fictitiously named defendants. In Ex parte Board of Trustees of University of Alabama, [Ms.

11

SC-2024-0210, Aug. 30, 2024] ___ So. 3d ___ (Ala. 2024) ("Board of Trustees"), this Court held that a trial court lacked subject-matter jurisdiction over an action against a State university and several fictitiously named defendants because the sole defendant named in the initial complaint was entitled to State immunity. This was so even though the plaintiff later purportedly amended the complaint to substitute identified individual defendants for fictitiously named parties. This Court reasoned that, because the initial complaint was a nullity, the purported amended complaint was also a nullity. Thus, if the Board is correct that "Mr. Josh" was a fictitiously named defendant, Board of Trustees establishes that the circuit court lacked subject-matter jurisdiction over the action from its commencement. Accordingly, the Board asserts a jurisdictional argument that is properly before us regardless of whether the Board's petition was timely.[1]

## B. The Merits

Having determined that the Board's argument is jurisdictional, we proceed to the next step in Blackman's framework and consider whether

---

[1]Because we conclude that we may consider the Board's argument regardless of timeliness, we pretermit discussion of the Board's alternative argument that its petition was timely.

the Board's argument is meritorious. As noted above, the Board contends that the circuit court never had subject-matter jurisdiction over Smith's action because the only defendant it says Smith named her complaint -- the Board -- was entitled to State immunity. As this Court held in <u>Board of Trustees</u>, a trial court lacks subject-matter jurisdiction over an action if the only named defendant is entitled to State immunity. This is so, even if the plaintiff later purportedly amends the complaint to substitute other defendants that are not entitled to State immunity. The crucial point in contention between the parties is whether "Mr. Josh" was a fictitiously named defendant.

Rule 9(h), Ala. R. Civ. P. governs fictitious-party practice in Alabama. That rule provides:

> "When a party is ignorant of the name of an opposing party and so alleges in the party's pleading, the opposing party may be designated by any name, and when that party's true name is discovered, the process and all pleadings and proceedings in the action may be amended by substituting the true name."

Here, Smith did not expressly allege in her complaint that she was ignorant of the bus driver's name. However, her use of the bus driver's first name only indicates that Smith was ignorant of his full legal name. Further, the circuit court's August 1, 2024, order dismissing Smith's

13

claims against the Board states that "the Minor Plaintiff [K.S.] does not know 'Mr. Josh's' full name." This Court has not addressed whether a party designated by his or her partial name should be treated as a fictitiously named party under Rule 9(h).

In its petition, the Board cites several federal cases for the proposition that a partially named party is regarded as fictitiously named. In Brooks v. Purcell, 57 F. App'x 47 (3d Cir. 2002) (not selected for publication in Federal Reporter), the United States Court of Appeals for the Third Circuit held that defendants identified as "Sue Doe, Jennifer Doe, Ozzie Doe, and Jane Doe Cook" were fictitiously named defendants whose citizenship was not to be considered in determining federal diversity jurisdiction under 28 U.S.C. § 1441(b). Brooks, 57 F. App'x at 50. The Third Circuit Court of Appeals noted that the plaintiff "did not supply sufficient information for the district court to know the specific identity of the four partially named defendants." Id. See also Swan v. AEW Cap. Mgmt., Civil Action No. 1:13-CV-1509-CC, July 10, 2013 (N.D. Ga. 2013) (not reported in Federal Supplement) (holding that "John Doe (Gary)" was a fictitious name); Mucci v. Decision One Mortg., Civil Action No. 12-1840 (JLL), Aug. 9, 2012, (D.N.J. 2012) (not reported

14

in Federal Supplement) (noting that partially named defendants are disregarded for purposes of determining diversity jurisdiction); Joshi v. K-Mart Corp., Civil Action No. 06-5448 (JLL), Sept. 25, 2007 (D.N.J. 2007) (not reported in Federal Supplement) (holding that "Defendant Frank Last Name Unknown" was a fictitious name).

The Board also cites several federal cases for the proposition that a defendant identified by his or her job position and his or her first name is still fictitiously named. See Conerly v. Liberty Mut. Ins. Co., Case No. 2:23-cv-515-GMN-EJY, June 29, 2023 (D. Nev. 2023) (not reported in Federal Supplement) ("[I]dentifying facts limited to a job position or a partial name are insufficient to convert a defendant from fictitious to real."); Green v. Doe, Case No. 1:22-cv-0435 JLT EPG, June 20, 2023 (E.D. Cal. 2023) (not reported in Federal Supplement) ("[A]llegations identifying only a defendant's first name and job position are insufficient to establish the individual as a 'real' defendant rather than a 'fictitious' defendant ...."); Sanders v. Costco Wholesale Corp., Case No. 4:22-cv-02717-YGR, July 28, 2022 (N.D. Cal. 2022) (not reported in Federal Supplement) ("[A]nything short of substituting a name defendant, such as identifying facts or a partial name for a defendant, is insufficient to

convert a defendant from fictitious to real."); <u>Johnson v. Walmart, Inc.</u>, Case No. 2:21-cv-08622-ODW, June 30, 2022 (C.D. Cal. 2022) (not reported in Federal Supplement) (holding that "David" was a fictitious name even though the complaint described him as "a supervisor and/or manager of the store at the time of Plaintiff's slip and fall"); <u>Bee v. Walmart Inc.</u>, Case No. 2:21-cv-08919-RGK-MAR, Mar. 15, 2022 (C.D. Cal. 2022) (not reported in Federal Supplement) (holding that Walmart manager identified as "Aaron" was fictitiously named).

Although this Court is not bound to follow decisions of lower federal courts, those decisions can serve as persuasive authority. <u>Glass v. Birmingham S. R.R.</u>, 905 So. 2d 789, 794 (Ala. 2004). We agree with the federal decisions cited above that a partial name is insufficient to identify a named party in a pleading, even if the pleader purports to know that party's identity or includes other descriptive information.

In her answer, Smith contends that "Mr. Josh" was an assumed name, not a fictitious identification. Smith relies on <u>Hughes v. Cox</u>, 601 So. 2d 465 (Ala. 1992), in which this Court held that a judgment against a realtor operating her business as a sole proprietorship was valid even though the complaint identified the realtor using her assumed business

name, not her legal name. Smith also relies on Ex parte CTF Hotel Management Corp., 719 So. 2d 205, 208 (Ala. 1998), for the proposition that, "when an individual or entity is sued under an assumed name …[,] the due process protections afforded that individual or entity require, for a valid judgment to be entered against that individual or entity, that there be no question as to the identity of the proper defendant."

Both cases are distinguishable because they involved specific business names by which the defendants regularly conducted business in the community, and there was no question regarding the identity of the defendants at the time the complaints were filed. By contrast, "Mr. Josh" was a partial name; Smith does not contest the circuit court's statement in its August 1, 2024, order that Smith was ignorant of the bus driver's full name, at least at the time she filed her complaint. Thus, unlike in Hughes and CTF Hotel Management Corp., here there was some question as to the bus driver's identity, even though Smith knew his first name and his occupation.[2]

---

[2]Smith contends that here there was also no question as to "Mr. Josh's" identity. Smith makes much of the fact that the Board identified "Mr. Josh" as "Mr. Josh Dunn" in its letter to the circuit clerk informing her that Dunn was deceased. Smith did not become aware of that identification until at least a month after she filed her complaint.

Smith also relies on several criminal cases in which this Court recognized that a criminal defendant could be identified by an assumed name in an indictment. Even assuming, without deciding, that such a concept is applicable in civil cases, those cases are still inapposite. In Stallworth v. State, 146 Ala. 8, 13, 41 So. 184, 185 (1906), this Court held that "a person may acquire by reputation a name which would as certainly identify him as his true name, and the assumed name or the one acquired by reputation may be used in the indictment just as effectively to identify him as his true name." Here, the partial name "Mr. Josh" does not as certainly identify the bus driver as would the bus driver's full legal name. Stallworth does not support Smith's contention that a first name suffices as an assumed name.

In Harris v. State, 48 Ala. App. 723, 725, 267 So. 2d 512, 514-15 (Crim. App. 1972), the Court of Criminal Appeals held that an indictment's inclusion of the defendant's alias name, "Hitler Harris," was not unduly prejudicial because it was an assumed name by which he was

---

Further, even if the Board's subsequent identification of "Mr. Josh" is evidence indicating that the Board knew who "Mr. Josh" was all along, it does not indicate that Smith, Dunn's estate, or the circuit court knew that Dunn was the party identified in Smith's complaint as "Mr. Josh."

known to some. But the question in <u>Harris</u> was not whether the defendant was properly identified; his legal name was included in the indictment. <u>Harris</u>, 48 Ala. App. at 723, 267 So. 2d at 513. Rather, the question was whether the trial court erred in allowing the defendant to be additionally identified by his alias, which he argued was prejudicial. The Court of Criminal Appeals did not address whether the defendant could be identified solely by his alias name.

In <u>Tucker v. State</u>, 43 Ala. App. 163, 184 So. 2d 366 (1966), the Alabama Court of Appeals reversed a forgery conviction because the defendant had signed a check using an assumed name by which he was sometimes known. The Court of Appeals noted that the name the defendant used to sign the check was included as one of several alias names in the indictment. Although the Court of Appeals acknowledged the difference between a fictitious name and an assumed name, it did so for purposes of determining what constitutes forgery. It did not address whether a partial name is an assumed name that is sufficient to identify a party to an action.

Finally, Smith contends that Rule 9(h) applies only when the pleader is ignorant of the identity of an opposing party "'"in the sense of

19

having no knowledge at the time the complaint was filed that the party subsequently named was in fact the party intended to be sued."'" Ex parte Nail, 111 So. 3d 125, 128 (Ala. 2012) (plurality opinion) (citations omitted). She relies on Eason v. Middleton, 398 So. 2d 245, 248 (Ala. 1981) (plurality opinion), in which a plurality of this Court held that "[t]he fictitious party rule is intended to operate in emergency situations in which neither the name nor the identity of the defendant is known, as in the situation when the cause of action is known, but not the liable party."

Based on Ex parte Nail and Eason, Smith contends that Rule 9(h) does not apply here because she was aware not only of her cause of action, but also of the bus driver's identity, i.e., that he was "Mr. Josh." However, as discussed above, a partial name is not sufficient to identify a party. Accordingly, a pleader who knows only a person's partial name does not know that person's identity for purposes of Rule 9(h). For instance, in Ex parte Nail, on which Smith relies, this Court applied Rule 9(h) even though the plaintiffs knew many of the defendants' partial names. Although the issue in that case was whether the plaintiffs had exercised due diligence in discovering the defendants' full legal names, the fact that

20

the plaintiffs were permitted to use fictitious names for the defendants in their complaint indicates that Rule 9(h) applies even when the pleader knows a defendant's partial name.

For these reasons, Smith's designation of the bus driver as "Mr. Josh" was insufficient to identify him as a named defendant. Thus, "Mr. Josh" was a fictitiously named defendant; the only named defendant in Smith's complaint was the Board, which was entitled to State immunity. Thus, under Board of Trustees, the circuit court lacked subject-matter jurisdiction over the action from its commencement. Accordingly, the circuit court's October 3, 2024, and November 4, 2024, orders requiring the Board to respond to Smith's subpoenas were void, and the Board has a clear legal right to relief from those orders and from any future orders against it.

However, the Board not only challenges the circuit court's subject-matter jurisdiction for purposes seeking relief from the circuit court's discovery orders and from taking future action against it; it also asks us to order the circuit court to dismiss the entire action for lack of subject-matter jurisdiction. Although we recognize that subject-matter jurisdiction cannot be waived and that this Court takes notice of

21

jurisdictional issues <u>ex mero motu</u>, the Board cites no precedent directing dismissal of an action in its entirety within the confines of a mandamus petition or a petition for a writ of prohibition filed by a nonparty. Without precedent for such an action, we decline to include such a mandate in our decision granting the Board's petition.

## IV. Conclusion

Based on the foregoing, we grant the Board's petition and direct the circuit court to vacate its orders requiring the Board to respond to Smith's subpoenas and to refrain from issuing any future orders against it. However, because the Board does not demonstrate that it, as a nonparty, has a clear legal right to dismissal of the action in its entirety, we deny the Board's petition insofar as the Board seeks a writ of mandamus requiring the circuit court to dismiss the action in its entirety.

PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.

Wise, Mitchell, Cook, and McCool, JJ., concur.

Sellers, J., concurs in the result.

Shaw, J., dissents.

Mendheim, J., dissents, with opinion, which Stewart, C.J., joins.

22

SC-2024-0756

MENDHEIM, Justice (dissenting).

The main opinion relies on Ex parte Board of Trustees of University of Alabama, [Ms. SC-2024-0210, Aug. 30, 2024] ___ So. 3d ___ (Ala. 2024) ("Board of Trustees"), and agrees with the argument made by the Jefferson County Board of Education ("the Board") that, because "Mr. Josh" was a fictitiously named defendant, "Board of Trustees establishes that the circuit court lacked subject-matter jurisdiction over the action from its commencement." __ So. 3d at __; see also id. at __ ("[T]he only named defendant in Smith's complaint was the Board, which was entitled to State immunity. Thus, under Board of Trustees, the circuit court lacked subject-matter jurisdiction over the action from its commencement."). Respectfully, the main opinion has misread Board of Trustees, which is distinguishable from the present case, as standing for a broader proposition than it does and has reached a result that is contrary to long-standing law. Before discussing those matters, however, some legal context will be helpful.

First, in conjunction with the payment of any pertinent filing fee, "[t]he filing of a complaint commences an action for purposes of the Alabama Rules of Civil Procedure." Precise v. Edwards, 60 So. 3d 228,

23

230-31 (Ala. 2010); Rule 3(a), Ala. R. Civ. P. ("A civil action is commenced by filing a complaint with the court."). To commence an action "[f]or statute-of-limitations purposes … there must <u>also</u> exist 'a bona fide intent to have [the complaint] immediately served.' <u>Dunnam[ v. Ovbiagele]</u>, 814 So. 2d [232,] 237-38 [(Ala. 2001)]." <u>Precise</u>, 60 So. 3d at 231. The fact that service has not been completed, which concerns whether the trial court has acquired personal jurisdiction over a defendant in the action, does not deprive a trial court of subject-matter jurisdiction over a properly initiated action or mean that the plaintiff has not "commenced" the action. Committee Comments on 1973 Adoption of Rule 3 ("[F]iling of the complaint 'commences' the action for purposes of the statute of limitations even though actual service may not be made until some time thereafter, at least where the plaintiff uses due diligence in attempting to make service.").

Second, regarding fictitious-party practice, Rule 9(h), Ala. R. Civ. P., states that,

> "[w]hen a party is ignorant of the name of an opposing party and so alleges in the party's pleading, the opposing party may be designated by any name, and when that party's true name is discovered, the process and all pleadings and proceedings in the action may be amended by substituting the true name."

The rule implies that a defendant (a party) who is fictitiously named has been adequately identified for purposes of commencing the action but that the plaintiff does not know the full legal name of that defendant. See Ex parte Russell, 314 So. 3d 192, 203 (Ala. 2020) (describing Rule 9(h) as allowing the plaintiff "to substitute a long-identified party for a fictitiously named defendant"); see also Enewold v. Olsen, 39 Neb. 59, 57 N.W. 765, 766 (1894) (construing a statutory provision substantially similar to Rule 9(h) and stating that "true name" means "a person's legal name ... made up of his first or given name and his surname or patronymic, and for one to be ignorant of either is to be ignorant of such person's name, within the meaning of said [statutory provision]").

> "Rule 9(h) does not ... excuse the plaintiff's ignorance of a cause of action against the fictitiously named defendant; it only excuses, under certain circumstances, the ignorance of the name of the party against whom the plaintiff has a cause of action. ... 'A contrary rule would emasculate the statute of limitations, which sets the time period a plaintiff has in which to determine who has hurt him and how.' Columbia Engineering International, Ltd. v. Espey, [429 So. 2d 955,] 959 [(Ala. 1983)]."

Harmon v. Blackwood, 623 So. 2d 726, 727 (Ala. 1993).

Rule 9(h) is to be read in conjunction with the precedents decided under the previous statutory framework for fictitious-party practice. See

Committee Comments on 1973 Adoption of Rule 9 (referencing Title 7, § 136, Ala. Code 1940); see also 1 Gregory C. Cook, Alabama Rules of Civil Procedure Annotated, Rule 15, Author's Comments § 15.9 (5th ed. 2018) ("In the author's opinion, Committee recommendations with respect to fictitious parties were intended to preserve the present law permitting such practice and to eliminate any obstacles, patent or latent, in any other provisions of these rules."). Those precedents acknowledge that fictitious-party practice may be used in different contexts and that application of the rules governing fictitious-party practice should take fact-specific considerations into account. For example, in Roth v. Scruggs, 214 Ala. 32, 106 So. 182 (1925), the Court discussed § 9515, Ala. Code 1923, which stated:

> "'Name of defendant. -- When the plaintiff is ignorant of the name of the defendant, such defendant may be designated in any pleading or proceeding by any name; and when his true name is discovered, the pleading or proceeding may be amended accordingly, either before or after service of the summons.'"

214 Ala. at 33, 106 So. at 184. Section 9515 was substantially the same as its successor, Title 7, § 136, Ala. Code 1940.[3] The <u>Roth</u> Court continued:

> "This statute is remedial in nature, and should be construed liberally to accomplish the purpose intended. …
>
> "… The chief field of operation is in emergency cases, where it is important to get service upon the party against whom plaintiff has a cause of action, but whose name is at the time unknown. Cases may arise in which a tort is committed by a person unseen and unidentified, but clues are at hand leading to a discovery of name and identity, and it is important to attach property or get service while within the jurisdiction of the court. We see no reason why this statute should not extend to the latter class. There may be others. The full application of a statute can best be determined as cases arise which call for its construction. …
>
> "… It aims <u>at getting into court the original party intended to be sued, using a fictitious name</u>, until the true name is ascertained, and the proceeding amended accordingly."

---

[3]Section 136 stated:

"When the plaintiff is ignorant of the name of a defendant, he must state that fact in the complaint, and such defendant may be designated in any pleading or proceeding by any name, and when his true name is discovered, the pleading or proceeding must be amended accordingly, either before or after service of the summons."

27

214 Ala. at 34, 106 So. at 184 (emphasis added). Likewise, in McKelvey-Coats Furniture Co. v. Doe, 240 Ala. 135, 136, 198 So. 128, 129 (1940), this Court stated:

> "[W]hile intended primarily for cases in which the name of defendant was unknown, it is an emergency statute, and includes cases in which neither the name nor the identity of defendant is known, as where the cause of action only is known, but the party liable is not, and there is need for immediate seizure of property by attachment or other appropriate writ; or there is urgent need to get service at the same time identity and name are ascertained."

See also id. ("As said in Roth v. Scruggs, supra, it is good practice to aver any descriptive matter known to plaintiff tending to identify the party sued as an aid to the officer in the service of the summons. Otherwise, the plaintiff should aid in perfecting service on the proper party.").

While there may be situations where insufficient information is known about a fictitiously named defendant for purposes of the plaintiff's having any present intent to serve that fictitiously named defendant or attempting to serve that fictitiously named defendant, see Weaver v. Firestone, 155 So. 3d 952 (Ala. 2013) (discussing problems associated with a fictitiously named defendant as to whom no present intent to immediately serve could exist and the import of that issue in relation to

28

equitable tolling, i.e., a statute-of-limitations, relation-back issue), the above-quoted precedents clearly reflect that that is not always the case. The present case illustrates the point.

In the present case, Sharonda Smith initiated her action by filing a complaint, on behalf of her child, against the Board, "Mr. Josh" -- the name reflected in email correspondence to parents referring to the children's bus driver -- and other fictitiously named defendants. In her complaint, Smith alleged that "Mr. Josh" was the bus driver that had left her child unattended for several hours on a bus on June 5, 2023, following a summer program at Minor Community School and that the Board, Mr. Josh, and the other fictitiously named defendants had caused her child personal injury for which they, respectively, were liable. At the end of Smith's complaint, she requested service via certified mail on the Board at its address and service "via process server" on Mr. Josh (but no other fictitiously named defendant) at the street address for the Jefferson County Board of Education's Transportation Department. According to the State Judicial Information System's case-detail sheet, including the case-action summary, the Jefferson Circuit Court Clerk had "process serve issued" via "a process server" to "Unknown Mr. Josh" on the day

29

the complaint was filed, May 10, 2024. It is unclear what occurred thereafter because the circuit court stated in its November 4, 2024, order denying the Board's motion to reconsider the denial of its motion to quash that the summons and complaint were "mailed out." The November 2024 order stated:

> "The essence of the case is an alleged incident where a school bus driver known to the kids on his bus as 'Mr. Josh,' negligently left the minor plaintiff herein alone and unattended on a parked school bus for a period of several hours. After this case was initiated and the Summons and Complaint were mailed out to that Defendant identified as 'Mr. Josh,' the Jefferson County Schools sent a letter to the Jefferson County Clerk of Court, dated July 10, 2024, stating in pertinent part: 'Mr. Josh Dunn, with Jefferson County Board of Education, is deceased.' … No contact information for 'Mr. Josh Dunn' was provided by the Jefferson County Schools to the Clerk of Court or to the Plaintiff. On August 1, 2024, the Court granted Defendant/Respondent Jefferson County Board of Education's Motion to Dismiss on immunity grounds.
>
> "[quote from August 1, 2024, order omitted, see infra]
>
> "On October 17, 2024, after diligent investigative efforts, Plaintiff amended the Complaint to add 'Joshua L. Dunn' and 'The Estate of Joshua L. Dunn' as Defendants. … Those Defendants were each served on October 23, 2024."

Also, as the circuit court noted, the Board had filed a letter in the circuit court in July 2024 that clearly indicated that "Mr. Josh" had been

30

sufficiently identified by the complaint such that the Board knew "Mr. Josh" was a reference to Joshua Dunn, who had died several weeks after the complaint was filed. And, in the August 1, 2024, order dismissing Smith's claims against the Board, the circuit court stated:

> "This dismissal does not apply to that Defendant identified in the Complaint as 'Mr. Josh.' Plaintiff's efforts to identify and serve 'Mr. Josh' are ongoing and, the Court finds, diligent. Those efforts are also difficult, because the Minor Plaintiff does not know 'Mr. Josh's' full name. Wherefore, Plaintiff is granted an additional 180 days to serve that Defendant identified in this case as 'Mr. Josh.'"

I note that the pertinent fact findings made by the circuit court are undisputed.

In light of the foregoing, it might be helpful to consider the matter before us this way: If Smith had filed her complaint against only "Mr. Josh"; had described him and his actions as she did in the complaint; had directed that personal service be made on him "via process server" at his place of employment as she did in the complaint; and the clerk had "process serve issued" to him as reflected on the case-detail sheet, clearly we would conclude under the above-referenced authority that Smith had commenced a valid action against the fictitiously named defendant "Mr. Josh" upon the filing of the complaint. See Precise, supra, Roth, supra.

31

So, why would the law be that no valid action was commenced against "Mr. Josh" under the foregoing conditions simply because the claims against a named defendant were dismissed based on a jurisdictional defense (sovereign immunity) that was applicable only to that dismissed defendant, particularly when the circuit court indicated in the dismissal order that "Mr. Josh" had been sufficiently identified for purposes of continuing attempts at service of process and continuing the action as to him? According to the main opinion, Board of Trustees so holds. But Board of Trustees made no mention of circumstances like those described above and did not discuss or account for the fact that not all fictitious-party-pleading cases involve the same posture. Specifically, Board of Trustees did not mention that any attempt at service could have been made or was made as to the fictitiously named defendants when the complaint was filed in that case. Instead, in concluding that no valid action had been commenced and rejecting the purported amendment of the complaint to replace the names of the fictitiously named defendants with the true names of those described defendants, this Court stated: "In fact, authority suggests that 'filing an unservable complaint with only fictitiously named defendants does not, under our precedents, commence

32

an action.' <u>Weaver v. Firestone</u>, 155 So. 3d 952, 963 (Ala. 2013)." __ So. 3d at __ (some emphasis added).

The present case did not involve the filing of an unservable complaint. It involved the filing of a servable complaint as to "Mr. Josh," who had been sufficiently identified such that service could be and was attempted from the initiation of the action. And dismissal of the Board aside, this Court did not hold in <u>Board of Trustees</u> or <u>Weaver</u> that, regardless of whether service could be effectively attempted as to a fictitiously named defendant, filing a complaint against such a defendant could not commence an action. <u>Weaver</u> was addressing an unservable complaint, as repeatedly referenced in that case, 155 So. 3d at 963-67, and <u>Board of Trustees</u> relied on <u>Weaver</u> as to that circumstance only. To read <u>Board of Trustees</u> as the main opinion does is to read that case as being in conflict with the law that has long governed fictitious-party practice, as discussed above, and without any support from the language in Rule 9(h).

Further, to the extent that certain statements in <u>Weaver</u> might be interpreted as implying that no valid action can be commenced against only a fictitiously named defendant, see 155 So. 3d at 966 n.4 and

33

accompanying text, such statements were made in the context of discussing the doctrine of equitable tolling in regard to an unservable complaint when no amount of diligence by the plaintiff would lead to discovery of the defendant's true name; the <u>Weaver</u> Court was responding to an argument that equitable tolling should not apply because the plaintiff could have simply filed an unservable complaint in order to toll the statute of limitations. <u>Id.</u> at 958. In other words, <u>Weaver</u> did not involve the issue whether a plaintiff might commence an action when he or she had filed a servable complaint against a fictitiously named defendant and any statements that might be read as addressing such an issue would be dicta.[4]

_____

[4]A plurality of this Court relied on <u>Weaver</u> in <u>Johnson v. Reddoch</u>, 198 So. 3d 497 (Ala. 2015). The <u>Johnson</u> plurality stated that in <u>Weaver</u> "this Court expressly rejected the arguments that Rule 9, Ala. R. Civ. P., permits a plaintiff to 'file[] a complaint naming as defendants <u>only</u> fictitious parties' and that a complaint naming only fictitious parties 'would have served to commence an action against the alleged tortfeasors.'" 198 So. 3d at 505 (quoting <u>Weaver</u>, 155 So. 3d at 963). While it is true that this Court rejected those arguments in <u>Weaver</u>, which were made by the defendants, we made those statements in the context of the equitable-tolling discussion regarding an unservable complaint and responded with the statement that "filing an unservable complaint with only fictitiously named defendants does not, under our precedents, commence an action and stop the running of the statute of limitations." 155 So. 3d at 963 (emphasis omitted). Also, the issue to be decided in <u>Johnson</u> was not whether an action against fictitiously named

34

Based on the foregoing, I cannot agree that Smith had not commenced a valid action against Mr. Josh simply because he had been named as a fictitious party. Instead, Smith commenced a valid action against "Mr. Josh," and the subsequent dismissal of the Board did not invalidate the commencement of that valid action as to him.

The Board makes an alternative argument, which the main opinion does not address, specifically that the circuit court lost jurisdiction in

---

defendants had been commenced, but whether the claims against them had remained pending after the entry of a dismissal order. The Johnson plurality concluded that those claims had been dismissed, 198 So. 3d at 504, and the discussion about the commencement of an action against fictitiously named defendants was dicta. And to the extent that the Johnson plurality's dicta might be read as indicating that no action can be commenced against only fictitiously named defendants, regardless of circumstances, that would come as a surprise to the judicial forbearers who decided Roth and McKelvey, or the legislature that enacted § 9515, Ala. Code 1923, particularly because it had long been the case that obtaining personal jurisdiction over a defendant required his or her being present within the territorial jurisdiction of the court purporting to exercise authority over that defendant. See International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) ("Historically the jurisdiction of courts to render judgment in personam is grounded on their de facto power over the defendant's person. Hence his presence within the territorial jurisdiction of court was prerequisite to its rendition of a judgment personally binding him." (citing Pennoyer v. Neff, 95 U.S. 714, 733 (1877))); see also Long v. Clark, 201 Ala. 454, 454, 78 So. 832, 832 (1918) ("[I]t was beyond the power of the Legislature to provide for the recovery of a personal judgment on a moneyed demand against a nonresident upon whom no personal service was had in this state." (citing Pennoyer)).

35

Smith's action before it directed the Board to comply with Smith's discovery request. According to the Board, the August 2024 order, contrary to its express terms, was a final judgment. In support of that argument, the Board relies on Ex parte Hare, Wynn, Newell & Newton, LLP, [Ms. SC-2023-0908, May 24, 2024] __ So. 3d __ (Ala. 2024), and numerous progeny of Owens v. National Security of Alabama, Inc., 454 So. 2d 1387, 1388 n.2 (Ala. 1984), which have extended Rule 4(f), Ala. R. Civ. P., to situations in which the claims against a named defendant were fully adjudicated against the plaintiff at a pretrial stage. In general, the cases reflect the principle that a generally worded order adjudicating a plaintiff's claims against him or her and in favor of a served defendant will be final for purposes of appeal, the claims against fictitiously named defendants being deemed dismissed.

None of the cases cited by the Board address an order like the August 2024 order, which states that the Board's motion to dismiss was

> "GRANTED and this Defendant only is DISMISSED from this case … on immunity grounds. This dismissal does not apply to that Defendant identified in the Complaint as 'Mr. Josh.' Plaintiff's efforts to identify and serve 'Mr. Josh' are ongoing and, the Court finds, diligent. Those efforts are also difficult, because the Minor Plaintiff does not know 'Mr. Josh's' full

36

> name. Wherefore, Plaintiff is granted an additional 180 days
> to serve that Defendant identified in this case as 'Mr. Josh.'"

(The 180-day period to perfect service is consistent with the 6-month period for filing a motion for substitution when there has been a suggestion of death filed under Rule 25(a)(1), Ala. R. Civ. P.) In other words, the cases cited by the Board do not address an order that expressly purports both to adjudicate the claims against the served defendant and to preserve the action against fictitiously named defendants, particularly an order allowing a limited time to complete service of process, which would appear to be within the discretion of the trial court under Rule 1(c), Ala. R. Civ. P. ("These rules shall be construed and administered to secure the just, speedy and inexpensive determination of every action."). See also Rule 21(a)(1)(E), Ala. R. App. P.; Ex parte Young, 352 So. 3d 1160, 1165 (Ala. 2021) (quoting Ex parte Showers, 812 So. 2d 277, 281 (Ala. 2001), for the proposition that, "'[i]f anything, the extraordinary nature of a writ of mandamus makes the Rule 21[, Ala. R. App. P.,] requirement of citation to authority even more compelling than the Rule 28[, Ala. R. App. P.,] requirement of citation to authority in a brief on appeal'"). Further, the Board's argument assumes that the circuit court's express intention to dismiss the claims against the Board must take

37

priority over or be deemed to displace its express intention to allow the continuance of the claims against "Mr. Josh" during a stated window for Smith to achieve service of process. But the August 2024 order is ambiguous in that regard, reflecting, on its face, conflicting intentions, and the Board has made no argument and cited no legal authority regarding how such an ambiguity should be resolved. See Rule 21(a)(1)(E). Thus, while this argument presents an interesting question, the Board has not established a clear legal right to the relief it requests.

Based on the foregoing, the Board's petition should be denied in its entirety.

Stewart, C.J., concurs.